No. 13-3066

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

### UNITED STATES OF AMERICA,

*Appellee,*

v.

### PAUL DAVID HITE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the District of Columbia
No. 00-CR-12-65-(CKK)
The Honorable Colleen Kollar-Kotelly

---

## BRIEF OF DEFENDANT-APPELLANT
## PAUL DAVID HITE

---

Barry J. Pollack
MILLER AND CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 626-5830
Facsimile: (202) 626-5801
bpollack@milchev.com

Lawrence S. Robbins
Alex Potapov
ROBBINS, RUSSELL, ENGLERT, ORSECK,
 UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
lrobbins@robbinsrussell.com

*Counsel for Defendant-Appellant Paul David Hite*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a), the following is a statement of the parties, *amici,* rulings under review and related cases:

**A.    Parties and Amici:**  The parties to this litigation are the United States of America and Paul David Hite.  No intervenors or *amici* appeared before the district court.  The Office of the Federal Public Defender for the District of Columbia will appear as *amicus curiae* before this Court.

**B.    Rulings Under Review:**  This appeal seeks review of the following rulings by Judge Kollar-Kotelly: 1) June 30, 2012 Memorandum Opinion, JA162; 2) January 24, 2013 Memorandum Opinion, JA363; 3) February 1, 2013 Order, JA394; 4) February 7, 2013 oral ruling as to the cross-examination of Timothy Palchak, JA795-97; and 5) July 23, 2013 Judgment, JA474.  The January 24, 2013 Memorandum Opinion is reported at 918 F. Supp. 2d 58 (D.D.C. 2013); the remaining rulings under review have no official citations.

**C.    Related Cases:**  The Appellant's application for release pending appeal was before this Court as *United States v. Paul David Hite*, No. 13-3072. There are no other related cases involving substantially the same parties and the same or similar issues.

## STATEMENT REGARDING ORAL ARGUMENT

This case raises several fundamental questions about the scope of a federal criminal statute, none of which has yet been resolved in this Circuit. It also presents two evidentiary issues that go to the heart of the government's case against the Appellant. In light of the complex legal issues and the significance of the trial record, oral argument would assist this Court. Accordingly, Appellant Paul David Hite respectfully requests that oral argument be granted.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .......................................................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................... ii

TABLE OF AUTHORITIES ................................................................. vi

STATEMENT OF JURISDICTION....................................................... 1

RELEVANT STATUTES AND REGULATIONS.................................. 1

STATEMENT OF THE ISSUES............................................................ 1

PRELIMINARY STATEMENT ............................................................ 2

STATEMENT OF FACTS .................................................................... 4

SUMMARY OF ARGUMENT ............................................................. 8

ARGUMENT ...................................................................................... 10

I.     DR. HITE WAS CONVICTED OF CONDUCT THAT DOES NOT VIOLATE SECTION 2422(b) ............................................ 10

       A.     Standard Of Review ............................................... 11

       B.     Section 2422(b) Requires Direct Communication With A Minor .................................................................... 11

       C.     Section 2422(b) Requires The Use Of Interstate Means For The Act Of Persuasion Itself....................................... 17

II.    THE DISTRICT COURT ERRONEOUSLY INSTRUCTED THE JURY THAT PERSUASION OF A MINOR WAS UNNECESSARY UNDER SECTION 2422(b)............................. 20

       A.     Standard Of Review ............................................... 20

       B.     The District Court's Instructions Were Erroneous ............ 20

iii

**TABLE OF CONTENTS—Cont'd**

**Page**

    C.     The Error Was Highly Prejudicial........................................22

III.   THE DISTRICT COURT ERRONEOUSLY EXCLUDED THE CRUCIAL TESTIMONY OF DR. HITE'S PSYCHIATRIC EXPERT ................................................................23

    A.     Standard Of Review ................................................27

    B.     Dr. Berlin's Diagnosis Of Dr. Hite Was Admissible.........................27

         1.    Dr. Berlin's Notice Of Expert Testimony Fully Satisfied Rule 16 ................................................28

         2.    Dr. Berlin's Diagnosis Should Not Have Been Excluded Under Rule 403 ....................................33

         3.    Dr. Berlin's Diagnosis Is Not Undermined By Its Purportedly Inadmissible Bases............................38

    C.     Dr. Berlin's General Testimony Concerning Psychiatric Disorders Was Admissible ................................................42

    D.     Dr. Berlin's Testimony Concerning Child Pornography Was Admissible..................................................................44

    E.     Each Of These Errors Was Highly Prejudicial; Together, They Were Devastating ..............................................46

IV.   THE COURT ERRONEOUSLY BARRED DR. HITE FROM IMPEACHING THE GOVERNMENT'S KEY WITNESS .......................48

    A.     Standard Of Review ................................................49

    B.     The District Court Erroneously Truncated The Cross-Examination Of Detective Palchak .....................................50

    C.     The Error Was Highly Prejudicial........................................52

## TABLE OF CONTENTS—Cont'd

**Page**

V.    IF THIS CASE IS NOT DISMISSED OUTRIGHT, IT
      SHOULD BE ASSIGNED TO A DIFFERENT DISTRICT
      JUDGE...........................................................................................................52

CONCLUSION .......................................................................................................55

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. United States*,
   516 U.S. 137 (1995) ................................................................ 18, 19

*Bowling v. Vose*,
   3 F.3d 559 (1st Cir. 1993) ...................................................31

*Chapman v. California*,
   386 U.S. 18 (1967) ...............................................................47

*Cobell v. Kempthorne*,
   455 F.3d 317 (D.C. Cir. 2006) ....................................... 53, 54

*Cosmo v. State*,
   739 S.E.2d 828 (Ga. Ct. App. 2013) .....................................12

*Goldberg v. Nat'l Life Ins. Co. of Vermont*,
   774 F.2d 559 (2d Cir. 1985) .................................................35

*Harbor Ins. Co. v. Schnabel Found. Co.*,
   946 F.2d 930 (D.C. Cir. 1991) ..................................... 49, 50, 51

*Simpson v. Socialist People's Libyan Arab Jamahiriya*,
   470 F.3d 356 (D.C. Cir. 2006) .............................................38

*Skilling v. United States*,
561 U.S. ____, 130 S. Ct. 2896 (2010)...................................14

*Smalls v. United States*,
   471 F.3d 186 (D.C. Cir. 2006) .............................................27

*Taylor v. Illinois*,
   484 U.S. 400 (1988) .............................................................31

*United States v. Andrus*,
   383 F. App'x 481 (5th Cir. 2010)..........................................31

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

## TABLE OF AUTHORITIES—Cont'd

**Page(s)**

*United States v. Barry*,
    938 F.2d 1327 (D.C. Cir. 1991) ..........................................................54

*United States v. Berk*,
    652 F.3d 132 (1st Cir. 2011) ...................................................... 15, 16

*United States v. Brown*,
    592 F.3d 1088 (10th Cir. 2009)..................................................... 29, 31

*United States v. Carson*,
    486 F.3d 618 (9th Cir. 2007) ............................................................30

*United States v. Cassell*,
    292 F.3d 788 (D.C. Cir. 2002) ..........................................................36

*United States v. Cooke*,
    675 F.3d 1153 (8th Cir. 2012)...........................................................36

*United States v. Cuellar*,
    478 F.3d 282 (5th Cir. 2007) ...................................................... 30, 31

*United States v. Douglas*,
    626 F.3d 161 (2d Cir. 2010) ............................................................15

*United States v. Dwinells*,
    508 F.3d 63 (1st Cir. 2007) ........................................................ 16, 21

*United States v. Engle*,
    676 F.3d 405 (4th Cir. 2012) ...........................................................11

*United States v. Finley*,
    301 F.3d 1000 (9th Cir. 2002)..................................................... 30, 31

*United States v. Fonseca*,
    435 F.3d 369 (D.C. Cir. 2006) ..........................................................50

*United States v. Foster*,
    986 F.2d 541 (D.C. Cir. 1993) ..........................................................50

## TABLE OF AUTHORITIES—Cont'd

**Page(s)**

*United States v. Fugit,*
   703 F.3d 248 (4th Cir. 2012) .............................................................22

*United States v. Godwin,*
   399 F. App'x 484 (11th Cir. 2010)....................................................36

*United States v. Hughes,*
   632 F.3d 956 (6th Cir. 2011) .............................................................22

*\*United States v. Johnson,*
   970 F.2d 907 (D.C. Cir. 1992) ................................................... 31, 47

*\*United States v. Laureys,*
   653 F.3d 27 (D.C. Cir. 2011) ..................................... 15, 16, 18, 21, 23

*United States v. Lee,*
   603 F.3d 904 (8th Cir. 2010).............................................................21

*United States v. Lewis,*
   318 F. App'x 1 (D.C. Cir. 2009) .......................................................36

*United States v. Lin,*
   101 F.3d 760 (D.C. Cir. 1996) ................................................... 50, 52

*\*United States v. Long,*
   328 F.3d 655 (D.C. Cir. 2003) ................................................... 34, 37

*United States v. McLean,*
   715 F.3d 129 (4th Cir. 2013).............................................................32

*United States v. Microsoft Corp.,*
   56 F.3d 1448 (D.C. Cir. 1995) ................................................... 53, 54

*United States v. Murrell,*
   368 F.3d 1283 (11th Cir. 2004).........................................................15

*United States v. Nestor,*
   574 F.3d 159 (3d Cir. 2009) ..............................................................15

# TABLE OF AUTHORITIES—Cont'd

**Page(s)**

*United States v. Nitschke*,
   843 F. Supp. 2d 4 (D.D.C. 2011) ........................................................18

*United States v. Nofziger*,
   878 F.2d 442 (D.C. Cir. 1989) ..........................................................14

*United States v. Olvera*,
   687 F.3d 645 (5th Cir. 2012) ............................................................15

*United States v. Ortega*,
   150 F.3d 937 (8th Cir. 1998) ............................................................30

*United States v. Payne*,
   805 F.2d 1062 (D.C. Cir. 1986) ........................................................40

*United States v. Perkins*,
   161 F.3d 66 (1998) ..........................................................................20

*United States v. Powell*,
   334 F.3d 42 (D.C. Cir. 2003) ..................................................... 47, 52

*United States v. Pryce*,
   938 F.2d 1343 (D.C. Cir. 1991) ........................................................50

*United States v. Romero*,
   189 F.3d 576 (7th Cir. 1999) ............................................................38

*United States v. Santos*,
   553 U.S. 507 (2008) ........................................................................15

*United States v. Sci. Applications Int'l Corp.*,
   626 F.3d 1257 (D.C. Cir. 2010) ........................................................23

*United States v. Sellers*,
   566 F.2d 884 (4th Cir. 1977) ............................................................35

*United States v. Shepard*,
   462 F.3d 847 (8th Cir. 2006) ............................................................29

# TABLE OF AUTHORITIES—Cont'd

**Page(s)**

*United States v. Smith*,
  964 F.2d 1221 (D.C. Cir. 1992) ........................................................................39

*United States v. Springs*,
  936 F.2d 1330 (D.C. Cir. 1991) ........................................................................39

*United States v. Spurlock*,
  495 F.3d 1011 (8th Cir. 2007) ..........................................................................15

*United States v. Taylor*,
  640 F.3d 255 (7th Cir. 2011) ............................................................................15

*United States v. Thomas*,
  410 F.3d 1235 (10th Cir. 2005) ........................................................................17

*United States v. Whitmore*,
  359 F.3d 609 (D.C. Cir. 2004) .................................................................... 27, 50

*United States v. Wishnefsky*,
  7 F.3d 254 (D.C. Cir. 1993) ..............................................................................11

*United States v. Wolford*,
386 F. App'x 479 (5th Cir. 2010) ......................................................................36

**Statutes**

5 U.S.C. § 6132(a) ..............................................................................................12

15 U.S.C. § 52(a)(1) ...........................................................................................12

18 U.S.C. § 2241 ................................................................................................16

18 U.S.C. § 2242 ................................................................................................16

18 U.S.C. § 2243 ................................................................................................16

18 U.S.C. § 2244 ................................................................................................16

*18 U.S.C. § 2422(b) ......................................... 1- 5, 8-11, 13, 15, 17-20, 22, 34, 52

# TABLE OF AUTHORITIES—Cont'd

**Page(s)**

18 U.S.C. § 2423 ........................................................................... 16, 22

18 U.S.C. § 2425 ...............................................................................16

18 U.S.C. § 3231 .................................................................................1

28 U.S.C. § 455(a) ............................................................................53

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 2106 ........................................................................... 4, 53

29 U.S.C. § 433(a)(4) ......................................................................12

*Fed. R. Crim. P. 16 ........................................................ 9, 28, 42, 43, 46

Fed. R. Crim. P. 16 advisory committee's note (1993 amendment) ......................29

Fed. R. Evid. 401 ...............................................................................35

Fed. R. Evid. 403 ...................................................... 28, 35, 36, 41, 44

Fed. R. Evid. 404 ........................................................... 7, 39, 40, 41

Fed. R. Evid. 703 ....................................................... 38, 39, 53

Fed. R. Evid. 704 ...............................................................................41

## Other Authorities

BLACK'S LAW DICTIONARY (8th ed. 2004) ............................................11

Korey J. Christensen, Note, *Reforming Attempt Liability Under
    18 U.S.C. § 2422(b): An Insubstantial Step Back From
    United States v. Rothenberg*, 61 DUKE L.J. 693 (2011) .......................................14

H.R. Rep. No. 105-557 (1998) ................................................... 2, 13, 14, 18

Andriy Pazuniak, Comment, *A Better Way To Stop Online Predators:
    Encouraging A More Appealing Approach To § 2422(b)*,
    40 SETON HALL L. REV. 691 (2010) ....................................................13

## TABLE OF AUTHORITIES—Cont'd

**Page(s)**

Protection of Children from Sexual Predators Act of 1998,
   Pub. L. No. 105-314, 112 Stat. 2974 (1998) ........................................................13

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of conviction against Dr. Paul David Hite, entered on July 23, 2013.  JA474.  The district court had jurisdiction under 18 U.S.C. § 3231.  Dr. Hite filed a timely notice of appeal on August 2, 2013.  JA480. This Court has jurisdiction under 28 U.S.C. § 1291.

## RELEVANT STATUTES AND REGULATIONS

18 U.S.C. § 2422(b):

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

Pursuant to Federal Rule of Appellate Procedure 28(f) and D.C. Circuit Rule 28(a)(5), additional pertinent statutes and regulations are included in an addendum to this brief.

## STATEMENT OF THE ISSUES

Dr. Hite was convicted on two counts of attempted coercion and enticement of a minor under 18 U.S.C. § 2422(b).  In relevant part, Section 2422(b) requires the government to prove that the defendant attempted to "knowingly persuade[], induce[], entice[], or coerce[]" a minor to engage in criminally punishable sexual

activity "using the mail or any facility or means of interstate or foreign commerce."  This appeal raises the following issues:

I.    Whether Dr. Hite was convicted for conduct that does not violate the charged statute, because: a) Section 2422(b) requires direct contact with a minor, whereas Dr. Hite communicated only with someone he knew to be an adult, and b) Section 2422(b) requires the use of interstate means for the act of persuasion, whereas Dr. Hite made no attempt to persuade (or cause anyone to persuade) the purported minors through the use of interstate means.

II.   Whether the district court erroneously instructed the jury that an attempt to persuade a minor, directly or indirectly, is unnecessary under Section 2422(b), and that it suffices that a defendant attempted to persuade an adult to "cause" or "arrange for" sexual activity.

III.  Whether the district court erroneously excluded the testimony of Dr. Hite's expert, a prominent Johns Hopkins psychiatrist whose testimony has been admitted in this Circuit under substantially similar circumstances.

IV.   Whether the district court erroneously prevented Dr. Hite from impeaching the government's key witness with inconsistent testimony he had previously given with respect to the central factual question of this case.

V.    Whether, if the charges are not dismissed but a new trial is ordered, the case should be reassigned to another district judge.

## PRELIMINARY STATEMENT

Section 2422(b) prohibits attempts to persuade, induce, entice, or coerce a minor into sexual activity using the means of interstate commerce.  By its terms, the statute – which "targets pedophiles who stalk children on the Internet,"  H.R. Rep. No. 105-557, at 10 (1998) – proscribes attempts to: a) communicate with a minor, b) using the Internet or another interstate means, c) in order to persuade the

minor to engage in sexual activity.  The district court systematically discarded each of those limitations on the scope of Section 2422(b).

First, the district court concluded that the statute does *not* require any attempt to communicate directly with a minor or purported minor.  Accordingly, it invited the jury to convict Dr. Hite even though he spoke only to a detective who purported to be an adult.  Second, the court concluded that the statute does *not* require the act of persuasion to be effected through interstate means.  Accordingly, it invited the jury to convict Dr. Hite even though there was no evidence – none – that the purported (actually, fictitious) minors would be contacted and persuaded through interstate means.  Finally, the district court concluded that the statute does *not* require any attempt to persuade a minor at all – and it instructed the jury to convict Dr. Hite even if the only person Dr. Hite attempted to persuade of anything was an adult.

But it gets worse.  The district court then gutted the defense by a pair of mutually reinforcing evidentiary errors.  Dr. Hite's core defense was that, in his Internet chats and phone calls with the detective, he was engaged in fantasy and role play, and harbored no intent to seduce an actual child.  To bolster that defense – for which there was abundant support in the evidence – Dr. Hite sought to call a noted expert on sexual disorders.  For reasons that are flawed at every turn, the district court precluded that crucial expert testimony in all respects.

3

Compounding matters, the district court also truncated Dr. Hite's cross-examination of the government's lead witness – the detective who communicated with Dr. Hite. After the detective opined that Dr. Hite was *not* merely fantasizing in their communications and had an intent to persuade an actual minor, the court improperly forbade Dr. Hite from impeaching him with testimony he had given in two similar cases; there, the detective had opined that traveling to meet the purported minor – something that Dr. Hite did not do – is the *sine qua non* of a person who is not merely engaging in fantasy and has the intent to persuade an actual minor.

For the reasons that follow, Dr. Hite's conduct does not fall within Section 2422(b), and the indictment should therefore be dismissed. At a minimum, the array of instructional and evidentiary errors – even taken singly, but especially together – warrant a new trial. And given the nature and extent of the district court's errors, we respectfully submit that this Court, in the exercise of its general supervisory power under 28 U.S.C. § 2106, should order that any new trial be conducted by a different judge.

## STATEMENT OF FACTS[1]

Dr. Hite is a 58-year-old anesthesiologist from Richmond, Virginia. Over the course of approximately two weeks, he engaged in a series of Internet chats and

---

[1] Additional facts are found in the argument section to which they pertain.

two phone calls with an undercover detective, Timothy Palchak.  JA517, 518, 581, 598.  The detective purported to be an adult male living in Washington, D.C. who had an ongoing sexual relationship with a 12-year-old girl, and less frequently engaged in sexual activity with his 3-year-old nephew.  Both minors were fictitious.

Dr. Hite and the detective had graphic sexual discussions, including discussions of sexual acts with the fictitious minors.  It is undisputed, however, that Dr. Hite understood at all times that he was speaking with an adult.  And, there is no evidence that Dr. Hite ever attempted to contact the purported minors through the use of interstate means (or to cause the detective to contact them through the use of interstate means).  Although Dr. Hite and the detective arranged to meet one another in D.C. on February 17, 2013, JA731-39, Dr. Hite never left his hometown.  He was arrested in Richmond that evening, JA798, and was thereafter charged with two counts of attempted coercion and enticement of a minor under 18 U.S.C. § 2422(b).  JA31.

As the district court recognized, the central issue at trial was "the question of intent: did [Dr. Hite] intend to entice or coerce the fictitious minors to engage in unlawful sexual activity, or were his conversations with [the detective] merely 'fantasies'?"  JA364.  There was abundant evidence that Dr. Hite was a mere fantasist who harbored no intent to entice an actual minor.  In the course of the

5

chats, Dr. Hite professed increasing reluctance about Palchak's references to the putative children, emphasizing that he was not interested in any "illegal activity" and that their conversations on the subject of the children had only been "fantasy." JA771, 777, 784-85, 790-91, 576-80.  Indeed, Dr. Hite appeared to be interested primarily in Palchak's online persona – a young and attractive gay man – and repeatedly insisted that their meeting would only be a meeting of two consenting adults.  JA761-65, 779, 733, 749.  And in the end, Dr. Hite declined even to meet Palchak, choosing instead to stay at home in Richmond (where he was arrested). JA754.

To support this well-grounded fantasy-only defense, Dr. Hite proffered the testimony of Dr. Frederick S. Berlin, the founder and director of the Sexual Behaviors Consultation Unit at the Johns Hopkins University Hospital and a leading national authority on sexual disorders.  JA193.  According to the detailed notice of expert testimony timely submitted by the defense more than two months before trial, Dr. Berlin was prepared to opine that: 1) Dr. Hite does not have a psychiatric disorder clinically associated with a desire to have sexual contact with children, JA195-96; 2) there is an important clinical difference between those who merely fantasize about sexual contact with minors, and those have an actual desire to engage in sexual contact with minors, JA194; and 3) the presence of sexually

6

explicit images involving minors on the thumbcache[2] of Dr. Hite's computer is consistent with his diagnosis of Dr. Hite as an individual who does not have a psychiatric disorder clinically associated with a desire to have sexual contact with an actual minor, JA197. In a dense opinion issued eleven days before trial, the district court excluded this testimony in its entirety. JA363.

The government's central witness at trial was Detective Palchak, who opined – based on his experience in law enforcement – that Dr. Hite was *not* simply fantasizing in their chats. JA714, 755-56. The defense sought to impeach Palchak with prior testimony he had given in two similar cases: twice, Palchak had testified that the key to determining whether such chats are fantasy is whether the suspect actually leaves his computer and travels to meet the person with whom he is chatting (which Dr. Hite did not). The district court barred that line of questioning on the grounds that Palchak had given the prior testimony in cases involving different offenses and different chats. JA795-97.

Following two days of deliberation (after a three-day trial), the jury convicted on both counts. JA830-31. Dr. Hite was sentenced to 22 years of imprisonment and a $500,000 fine (an upward variance that resulted in a fine that

---

[2] A thumbcache is an automatically generated file containing thumbnail images of folders that have been accessed on a Windows computer. While Dr. Hite was not charged with possession of child pornography, the district court permitted the government to introduce evidence about these images under Federal Rule of Evidence 404(b).

was two times the high end of the applicable Sentencing Guideline fine range of $25,000 to $250,000).  JA469-70, 838-39.

## SUMMARY OF ARGUMENT

The Internet chats and telephone calls in this case are highly disturbing.  It is easy to imagine the jury's revulsion, and perhaps as well the government's aggressiveness in pursuing its case.  And as controversial as mandatory minimum sentences have proven, no one can doubt Congress's reasons for punishing – and punishing severely – adults who prey on minors through Internet stalking.

Precisely because the penalties under Section 2422(b) are so severe, however, the text of the statute must be scrupulously obeyed, consistent with the rule of lenity.  Precisely because ordinary jurors will react to such offenses with disgust, the playing field at trial must always be level.  And precisely because the government may be tempted in such cases toward overzealousness – toward shutting down permissible lines of defense – a defendant charged with these disturbing offenses must get a full and fair day in court.

As demonstrated below, these salutary principles were forsaken in Dr. Hite's case.

I.     Appellant was convicted for conduct that does not constitute a violation of the charged statute.  *First*, the plain language and legislative history of Section 2422(b) – reinforced by the rule of lenity – establish that the statute

8

criminalizes only *direct* persuasion of a minor.  Dr. Hite never communicated with anyone who was, or whom he believed to be, a minor.  *Second*, Section 2422(b) requires the use of interstate means *for the act of persuasion itself*.  Dr. Hite never attempted to contact a minor using the phone or Internet, and never intended that anyone else do so.  In both independent respects, Section 2422(b) simply does not prohibit what Dr. Hite did.

II.    The gravamen of Section 2422(b) is the persuasion, inducement, enticement, or coercion of a minor.  Here, however, the district court instructed the jury that it could convict Dr. Hite if it found that he persuaded *an adult* who could in turn *cause or arrange for* sexual activity with a minor.  That instruction read out of Section 2422(b) its central requirement – the attempt to gain a minor's assent.

III.   The district court erroneously excluded the expert testimony of Dr. Berlin.   In doing so, the court adopted an unprecedented – and draconian – understanding of Federal Rule of Criminal Procedure 16; contradicted its own treatment of similar evidence proffered by the government; and attributed to Dr. Hite a concession he manifestly never made.  The exclusion completely disabled Appellant's core defense.

IV.    The district court erroneously truncated the cross-examination of the government's key witness.  Detective Palchak testified that, in his lay opinion, Dr. Hite's communications with him were not mere fantasy.  The defense sought to

impeach Palchak with prior testimony in which he stated that the key to distinguishing fantasy from reality is whether the defendant left his computer and travelled to an agreed-upon meeting place.  Dr. Hite did not do that here; he was arrested in his hometown on the very evening he was supposed to meet Palchak in D.C.  The district court's refusal to permit this line of cross-examination was prejudicial error in its own right – but especially so, when coupled with the court's refusal to permit expert testimony from Dr. Berlin.

V.    Because Dr. Hite did not violate the statute, the charges against him should be dismissed.  In the event the case is remanded, however, any new trial should be reassigned to a different district judge.  While this is an extraordinary request, the pattern of decisions in this case warrants such reassignment.

## ARGUMENT

## I.    DR. HITE WAS CONVICTED OF CONDUCT THAT DOES NOT VIOLATE SECTION 2422(b)

For two independent reasons, Appellant's conduct falls outside the ambit of Section 2422(b), and the charges should therefore be dismissed.  First, Dr. Hite never attempted to have any proscribed communications directly with the purported minors – he spoke exclusively with the detective, whom he knew to be an adult.  Second, there is no evidence that Dr. Hite intended that anyone communicate with the minors using the Internet or any other means of interstate commerce.

10

### A.     Standard Of Review

Questions of statutory interpretation are reviewed *de novo.  United States v. Wishnefsky*, 7 F.3d 254, 256 (D.C. Cir. 1993).

### B.     Section 2422(b) Requires Direct Communication With A Minor

1.     It is undisputed that Dr. Hite never communicated, or attempted to communicate, directly with anyone he believed to be a minor.  The district court concluded, however – and so instructed the jury – that "[d]irect communication with a child is unnecessary" and that the "government must only prove that the defendant believed that he was communicating with someone who could arrange for the child to engage in unlawful sexual activity."  JA450-51.  That is mistaken.

Each of the *actus reus* verbs – persuade, induce, entice, and coerce – describes an action performed by one person on another.  As the Fourth Circuit has explained, "[i]n ordinary usage, the words ['persuade,' 'induce' and 'entice'] are effectively synonymous, and the idea conveyed is of one person leading or moving another by persuasion or influence."  *United States v. Engle*, 676 F.3d 405, 411 n.3 (4th Cir. 2012) (internal quotation marks omitted).[3]  In this case, the direct object of each verb is a minor – so the most natural reading of the statute is that it requires persuasion *by* the defendant *of* the minor, without the intermediation of a third party.  As a state appellate court recently held in interpreting a similar statute, "the

---

[3] The same is true of "coerce," which involves "compel[ling]" another person to act.  BLACK'S LAW DICTIONARY 275 (8th ed. 2004).

plain meaning of the phrase 'seduce, solicit, lure, or entice a child . . . to commit any illegal act' *cannot be construed* to encompass [the defendant's] communication with only an adult or a person known to be an adult." *Cosmo v. State*, 739 S.E.2d 828, 833 (Ga. Ct. App. 2013) (emphasis added).

This conclusion is consistent with the way these verbs are used in ordinary speech. When we say that one person persuaded another, we almost invariably mean that this was done through direct interaction. This is why one rarely hears the phrase "persuade directly" – the word "persuade" already connotes direct communication. By contrast, if one wanted to describe persuasion through some indirect method, one would be expected to specify as much.

Notably, that is exactly what Congress has done when it *intends* to cover both direct and indirect conduct, in an array of statutes pairing the words "persuade," "induce" and "coerce" with the phrase "directly or indirectly."[4]

---

[4] *See, e.g.,* 29 U.S.C. § 433(a)(4) ("Every employer who in any fiscal year made . . . any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertakes activities where an object thereof, *directly or indirectly*, is to *persuade* employees to exercise or not to exercise, or *persuade* employees as to the manner of exercising, the right to organize and bargain collectively . . . .") (emphasis added); 15 U.S.C. § 52(a)(1) ("It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement . . . [b]y United States mails, or in or having an effect upon commerce, by any means, for the purpose of *inducing*, or which is likely to *induce, directly or indirectly* the purchase of food, drugs, devices, services, or cosmetics . . . .") (emphasis added); 5 U.S.C. § 6132(a) ("An employee may not

Unless that phrase is pure surplusage, its purpose in other statutes is to foreclose precisely the interpretation advanced here: that the verbs by themselves imply direct communication only. Congressional practice therefore reflects the inference from ordinary language – that the *actus reus* verbs refer only to direct action.

      2.    The legislative history confirms the lesson of the text, "reflect[ing] Congress's intent to target cyberpredators *interacting with minors online*." Andriy Pazuniak, Comment, *A Better Way To Stop Online Predators: Encouraging A More Appealing Approach To § 2422(b)*, 40 SETON HALL L. REV. 691, 693 (2010) (emphasis added).

      The most pertinent legislative history accompanied the Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 112 Stat. 2974 (1998), which amended Section 2422(b) to augment its penalties. As the House Report explained, the Act sought to punish "'[c]yber-predators' [who] often 'cruise' the Internet in search of lonely, rebellious or trusting young people," and who are able to "reach into the home and befriend a child." H.R. Rep. No. 105-557, at 11-12. Accordingly, the Act "attacks pedophiles who stalk children on the Internet" and prevents them from "contacting a minor over the Internet." *Id.* at 12. Increased penalties under Section 2422(b), in particular, were necessary because

---

*directly or indirectly* intimidate, threaten, or *coerce*, or attempt to intimidate, threaten, or coerce, any other employee . . . .") (emphasis added).

"[t]he public's absolute intolerance of child-stalking on the Internet must be unmistakenly communicated." *Id.* at 21.

As these statements reflect, Congress was troubled by *direct* contact between the child and the adult. As one commentator put it, the "repeated use of child-centric language to describe the activity [to be criminalized] suggests that the committee was focused on prohibiting direct communications between predators and minors." Korey J. Christensen, Note, *Reforming Attempt Liability Under 18 U.S.C. § 2422(b): An Insubstantial Step Back From United States v. Rothenberg*, 61 DUKE L.J. 693, 712 (2011). By contrast, there is no mention in the legislative history of adult intermediaries. While not dispositive, the legislative history confirms the plain meaning of the text – that only *direct* acts of persuasion (or attempted persuasion) of a minor are covered by the statute.

3.    To the extent any ambiguity remains, it must be resolved in Dr. Hite's favor under "the familiar principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Skilling v. United States,* 561 U.S. __, 130 S. Ct. 2896, 2932 (2010) (internal quotation marks omitted); *United States v. Nofziger*, 878 F.2d 442, 452 (D.C. Cir. 1989).

"'This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain . . . . It also places the weight of inertia upon the party that can best

14

induce Congress to speak more clearly.'"  *United States v. Taylor*, 640 F.3d 255, 259-60 (7th Cir. 2011) (Posner, J.) (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality op.)).  The latter consideration looms particularly large in this case.  As Judge Brown has pointed out, "Congress has not been reticent to amend § 2422(b), and each successive amendment has made the statute more punitive." *United States v. Laureys*, 653 F.3d 27, 42 (D.C. Cir. 2011) (Brown, J., dissenting). Over ten years, the penalty for violating the statute has ballooned from a ten year *maximum* sentence to a ten year *minimum* and a lifetime maximum.  *Id.* at 42 n.5. It would be particularly inappropriate in this context for courts to resolve ambiguity *against* a criminal defendant – Congress is clearly paying close attention and can speak with precision if it wishes.

4.    As the government has noted, certain other Courts of Appeals have held that persuasion through an "adult intermediary" falls within the statute.[5] These opinions, however, are unpersuasive.  *None* of the cases cited by the government considered the rule of lenity; only one discussed the legislative history, *United States v. Nestor*, 574 F.3d 159, 162 (3d Cir. 2009); and none

---

[5] JA496 (citing *United States v. Olvera*, 687 F.3d 645, 647 (5th Cir. 2012) (citing *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1650 (2012)); *United States v. Douglas*, 626 F.3d 161, 164-65 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 1024 (2011); *United States v. Nestor*, 574 F.3d 159, 162 (3d Cir. 2009); *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007); *United States v. Murrell*, 368 F.3d 1283, 1288 (11th Cir. 2004)).

addressed Congress's frequent use of the "directly or indirectly" language with the same *actus reus* verbs.[6]

Far more persuasive is Judge Brown's *Laureys* opinion, which strongly supports Dr. Hite's position. 653 F.3d 27, 37-42 (Brown, J., dissenting).[7] As Judge Brown observed, "Congress very well could have decided that child victims are more vulnerable to online persuasion . . . than their adult guardians. The most sensible interpretation of [Section 2422(b)] is that Congress targeted the enticement of minors for that very reason." *Id.* at 42. Judge Brown also noted that interpreting the statute in accordance with its language would not "[leave] prosecutors powerless against child predators," as Congress has provided a bevy of related statutes covering everything from soliciting a child for sex crimes (18 U.S.C. § 2425) to traveling with the intent to engage in illicit sexual conduct (Section 2423(b)) to engaging in the illicit sex act itself (Sections 2241-44, 2423(c)). 653 F.3d at 42. In light of these considerations, there is every reason to enforce the plain language of the statute.

---

[6] Notably, the First Circuit in *Berk* did not even attempt to reconcile its holding with its own directly contrary precedent. In *United States v. Dwinells*, that court had held that if a "speaker does not believe his auditor to be a minor," the conversation "falls outside the scope of section 2422(b)." 508 F.3d 63, 71 (1st Cir. 2007).

[7] The *Laureys* majority did not resolve the issue. 653 F.3d at 32-33.

16

5.      The government has not suggested – nor could it – that Dr. Hite ever believed he was speaking with one of the fictitious minors, nor that he ever attempted to persuade either of them directly.   As such, his conduct was not prohibited by Section 2422(b) and the charges against him should be dismissed.

### C.      Section 2422(b) Requires The Use Of Interstate Means For The Act Of Persuasion Itself

1.      Dr. Hite concededly used the Internet and a telephone to communicate with the detective, whom he knew to be an adult.   But there is no evidence – none – that either Dr. Hite or the detective proposed to use any means of interstate commerce to engage in an act of "persuasion," "inducement," "enticement," or "coercion" with a minor.   To the contrary, the *only* evidence offered at trial showed that the detective proposed to communicate with the putative minors *in person*. *See, e.g.*, JA523, 527, 529-30.

The plain language of the statute criminalizes only persuasion, inducement, enticement or coercion "using . . . any facility or means of interstate or foreign commerce."  18 U.S.C. § 2422(b); *see also, e.g.*, *United States v. Thomas*, 410 F.3d 1235, 1245 (10th Cir. 2005) (required elements are "use of a facility of interstate commerce . . . to knowingly persuade, induce, entice, or coerce" a minor to have sex).  By its terms, the statute does not reach acts of persuasion that are committed by other means.

17

Again, while this Circuit has never resolved the issue, Judge Brown, in her dissent in *Laureys*, explained that "[e]ven if [the defendant] intended at some point in the future to entice the fictitious child herself, there is no evidence [the defendant] intended to use a facility of interstate commerce to do so." 653 F.3d at 39 n.2 (Brown, J., dissenting); *see also United States v. Nitschke*, 843 F. Supp. 2d 4, 11 (D.D.C. 2011) ("The statute thus does not criminalize an intent to persuade at some later point in person."). This reading is supported by the statute's legislative history;[8] moreover, to the extent the text presents any ambiguity, it should be resolved in favor of Dr. Hite under the rule of lenity.

2.      The government's contrary view, accepted by the district court, has no logical stopping point. As the government sees it, Section 2422(b) is satisfied so long as the "enticement activities" are somehow "facilitated" by means of interstate commerce. JA75. The Supreme Court rejected *precisely* this sort of "facilitation" approach to the meaning of the word "use" in *Bailey v. United States*, 516 U.S. 137 (1995).

*Bailey* addressed what it means to "use" a firearm "during and in relation to" a drug trafficking offense. *Id.* at 138-39. The Court held that this Circuit's "facilitation" standard was too lax because it "provide[d] almost no limitation on the kind of possession that would be criminalized." *Id.* at 143-44. So, too, here:

---

[8] *See, e.g.,* H.R. Rep. No. 105-557, at 10 (explaining that the bill "targets pedophiles who stalk children *on the Internet*." (emphasis added)).

the government's "facilitation" standard – encompassed in the district court's instructions to the jury – would criminalize almost any use of the telephone or Internet.  Under the government's view, Dr. Hite would not even need to speak to the detective online to run afoul of the statute.  It would suffice that Appellant spoke to Detective Palchak in person, but checked weather.com beforehand (or checked the weather by phone) to see if he should bring an umbrella to their meeting.

*Bailey* observed that if Congress meant to criminalize simple possession of a gun by a person who commits a drug offense, it could have easily said so.  *Id.* at 143.  But the statutory text demanded more:  To "use" a firearm in the requisite sense, a defendant must "actively employ[]" the weapon *in committing* the underlying drug crime.  *Id.* at 150.  The wording of Section 2422(b) is, if anything, stronger and clearer, as it requires persuasion (or attempted persuasion) *using* interstate means, rather than merely the use of interstate means "in relation to" the persuasion.  *Compare Bailey*, 516 U.S. at 138-39.  It follows that under Section 2422(b), interstate means must be *actively employed* in the act of persuasion itself.

3.     There is no evidence – not a whisper – that Dr. Hite ever intended to contact the minors through interstate means, or to cause the undercover officer to contact the minors through interstate means.  For this second independent reason, the indictment in this case should be dismissed.

19

## II. THE DISTRICT COURT ERRONEOUSLY INSTRUCTED THE JURY THAT PERSUASION OF A MINOR WAS UNNECESSARY UNDER SECTION 2422(b)

The district court erroneously believed that it was unnecessary – for anyone, through any means – to attempt to persuade, induce, entice or coerce a minor. The court therefore instructed the jury that under § 2422(b), "[t]he government must only prove that the defendant believed that he was communicating with someone *who could arrange* for the child to engage in unlawful sexual activity." JA450-51 (emphasis added). Elaborating the point, the court added that "the government must prove only that the defendant . . . intended to persuade an adult *to cause* a minor to engage in unlawful sexual activity." JA451 (emphasis added). But persuading *an adult* to "arrange" or "cause" a minor – as opposed to "persuad[ing]," "induc[ing], "entic[ing]" or "coerc[ing]" the minor – to engage in sexual activity simply does not satisfy Section 2422(b).

### A. Standard Of Review

The question whether jury instructions were improper is a question of law that is reviewed *de novo*. *United States v. Perkins*, 161 F.3d 66, 69 (1998).

### B. The District Court's Instructions Were Erroneous

Section 2422(b) requires that there be an act, or attempted act, of *persuasion*, *inducement*, *enticement*, *or coercion of a minor*. The district court held otherwise. It told the jury that as long as *an adult* was persuaded, the unlawful sexual contact

20

with the minor could result by "causing" it or "arranging for" it, rather than through an act of bending the child's will.

That's flatly wrong.  As Judge Brown explained in *Laureys*:

> It is an open question in this circuit whether [Section] 2422(b) permits a conviction for persuasion of an adult.  I say it is an open question only in the sense that we have never addressed it; the plain meaning of the statute leaves no room for doubt about the answer.   Section 2422(b) is unambiguously directed at persuasion of a minor.

653 F.3d at 39.[9]

As Judge Brown observed, it is well settled that "[Section] 2422(b) requires an attempt to bend the child-victim's will."  *Id.* at 40 & n.3-4 (collecting cases); *see Dwinells*, 508 F.3d at 71 (explaining that "Section 2422(b) criminalizes an intentional attempt to achieve a *mental* state – a minor's assent").  Even courts that have accepted the government's "adult intermediary" theory have nonetheless "required proof the defendant attempted to cause *assent on the part of a minor*, not the adult intermediary."   *Laureys*, 653 F.3d at 39-40 & n.3-4 (Brown, J., dissenting) (emphasis added) (collecting cases); *see also United States v. Lee*, 603

---

[9]  Although Judge Brown's opinion was a dissent, the panel majority did not disagree with her analysis of the statute or affirm the district court's judgment on that basis.   653 F.3d at 39 ("The court does not attempt to defend the district court's statement of the law on the merits, and there is no dispute that — if it is erroneous — the district court's jury instruction was prejudicial.   The court disagrees only with my conclusion that any error was plain.").   In this case, the issue was fully preserved below.

F.3d 904, 914 (8th Cir. 2010) (explaining that "the government must prove that the defendant intended to cause assent on the part of the minor").

The words "cause" or "arrange for" simply do not convey the crucial element of attempting to bend the minor's will.[10] By describing the offense in this way, the district court discarded the central premise of Section 2422(b): "'protect[ing] children *from the act of solicitation itself*.'" *United States v. Fugit*, 703 F.3d 248, 255 (4th Cir. 2012) (quoting *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011)) (emphasis added). What is more, the district court's instruction cannot be squared with the overall statutory scheme. A subsection in the very next statute, 18 U.S.C. § 2423(d), criminalizes "arrang[ing]" or "facilitat[ing]" the travel of another person for the purpose of engaging in illicit sexual contact. The district court's interpretation effectively imports the words "arrange" and "facilitate" into Section 2422(b) – but Congress clearly knew how to use them when it wanted to do so.

### C.    The Error Was Highly Prejudicial

To show harmless error, the government must demonstrate "that the judgment was not substantially swayed by the error." *United States v. Sci.*

---

[10] In overruling Dr. Hite's objection to the "arranging" instruction, the court acknowledged that there is a distinction between "arranging" for a child to engage in illicit sexual conduct and persuading, inducing, enticing, or coercing the child to do so. The district court nevertheless instructed that as long as the defendant attempted to persuade the adult undercover to *cause* or *arrange* sexual contact with a minor, the statute was violated. JA400.

*Applications Int'l Corp.*, 626 F.3d 1257, 1276 (D.C. Cir. 2010) (internal quotation marks omitted).  It cannot meet that burden.

In their conversations, the detective suggested to Dr. Hite that he had substantial access to – and control over – the children.  *See, e.g.*, JA518-19.  As such, the jury could have found that he would "cause" or "arrange" the sexual contact with the children in any number of ways that did not involve the distinctive *actus reus* element of attempting to achieve a mental state of assent.  In other words, the jury may well have convicted Dr. Hite without making *any* finding that he intended for the detective to engage in "persua[sion]," "induce[ment]," "entice[ment]" or coerc[ion]" of a minor.  A new trial is therefore warranted.  *See also Laureys*, 653 F.3d at 30, 39 & n.2 (Brown, J., dissenting) (concluding that an identical instruction was indisputably prejudicial).

## III.  THE DISTRICT COURT ERRONEOUSLY EXCLUDED THE CRUCIAL TESTIMONY OF DR. HITE'S PSYCHIATRIC EXPERT

Dr. Hite's sole defense at trial was that he did not intend to persuade a minor to engage in sex and that his conversations with the detective were only fantasy.  There was abundant evidence in the record to support that contention.  Dr. Hite resisted Palchak's efforts to introduce the putative children, making clear that their discussions of the children had been only "fantasy" and that "the last thing that we want to do is participate in any illegal activity."  JA771, 777, 784-85, 790-91, 576-80.  Instead, Dr. Hite expressed interest in Palchak's online persona: an attractive

23

younger man who shared Dr. Hite's sexual fantasies.  JA761-65, 779.  Once the two had agreed to meet, Dr. Hite repeatedly insisted – and Palchak confirmed – that their planned meeting would be nothing more than a meeting of two consenting adults.  JA733, 749.  And on the day the meeting was supposed to take place, Dr. Hite stayed at home instead of traveling to D.C.  JA754.  Having heard this evidence (but without hearing the testimony of the excluded defense expert), the jury apparently found the question a close one, deliberating for two days after a trial that lasted only three days.

To support this defense, Dr. Hite had proffered the expert testimony of Dr. Frederick S. Berlin, a board certified psychiatrist and founder and director of the Sexual Behaviors Consultation Unit at the Johns Hopkins University Hospital.  Dr. Berlin is a leading expert in the evaluation and treatment of patients with sexual disorders such as pedophilia.  In a recent case, Judge Bates allowed Dr. Berlin to testify on the very topics at issue in this case, observing that he is "not sure there's anybody more than three or four people in the country who would have the qualifications that Dr. Berlin would have."  JA609.

Appellant's Rule 16 notice of expert testimony timely disclosed and summarized the following three opinions, each of which was crucial to the defense:

- *The diagnosis of Dr. Hite*.  After examining Dr. Hite and studying various clinically relevant materials, Dr. Berlin concluded "that Dr. Hite

24

does *not* have a psychiatric disorder clinically associated with a desire to have sexual contact with children." JA195-96 (emphasis added). This conclusion was based on the application of diagnostic criteria set out in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), the standard classification tool used at that time by American mental health professionals. In Dr. Berlin's opinion, "Dr. Hite does not display the vast majority of behaviors clinically associated with desire to have sexual contact with children and does not display behaviors that would lead Dr. Berlin to conclude that Dr. Hite has a desire to engage in sexual activity with an actual child." JA196. Whether Dr. Hite had a *desire to engage in sexual activity with a child* was plainly relevant to the central disputed issue in the case: whether Dr. Hite intended to persuade a child to engage in sexual activity.

- *General testimony concerning sexual disorders*. Dr. Berlin would also have testified, more generally, about the "clinically significant difference between [those who have] a desire to engage in actual sexual contact with minors and those who fantasize or role play involving sexual contact with minors." JA194. This would have informed the jury that fantasizing about sexual activity with children does not necessarily indicate a real-

25

life desire to engage in such sexual activity.   Again, such testimony would have cut right to the heart of the core disputed issue at trial.

- *The relationship between viewing child pornography and sexual interest in children*.  Dr. Berlin would also have provided important context for a piece of evidence the government relied on heavily: namely, a discrete number of sexual images involving children that were found in the thumbcache of Dr. Hite's computer.   As Dr. Berlin would have explained, many individuals who are interested in child pornography never become sexually involved with an actual minor.   JA194. Moreover, those who have a desire to engage in sex with actual minors generally "amass[] large collections of child pornography over a period of many years," "purchase[] access to paid websites or other commercial sources of child pornography," and "treasure [their] collections and prefer not to be without [them] for any prolonged period of time." JA194, 196-97.  There was no evidence of any such pattern with Dr. Hite.   JA197.   There was no evidence that Dr. Hite maintained a collection of child pornography.  No child pornography was saved on his computer.  The images in the thumbcache, which is not accessible to a user of the computer, were recovered through the use of forensic software, and demonstrated at most that at some point in the past the

26

relatively small number of such images captured in the thumbcache had

been viewed by a user of the computer. "The fact that Dr. Hite *may* have

received child pornography in the past . . . would not constitute evidence

of a desire actually to be sexual with a child." JA197.

Dr. Berlin's testimony, in short, was utterly crucial to the defense of this

case. Through that testimony, the jury would have learned that there are fantasists

who do not wish to act, that Dr. Hite may be one of them, and that his having at

one time viewed a relatively small number of pornographic images is fully

consistent with his defense. Nevertheless, invoking a smorgasbord of rationales,

the district judge precluded Dr. Berlin from testifying in all respects. As

demonstrated below, that decision is flawed at every turn.

### A.    Standard Of Review

Evidentiary rulings are reviewed for abuse of discretion. *United States v.*

*Whitmore*, 359 F.3d 609, 616 (D.C. Cir. 2004). But a district court "by definition

abuses its discretion when it makes an error of law." *Smalls v. United States,* 471

F.3d 186, 191 (D.C. Cir. 2006) (internal quotation marks omitted).

### B.    Dr. Berlin's Diagnosis Of Dr. Hite Was Admissible

After examining Dr. Hite and studying relevant clinical evidence, Dr. Berlin

concluded "that Dr. Hite does not have a psychiatric disorder clinically associated

27

with a desire to have sexual contact with children." JA195-96. In layman's terms, Dr. Berlin concluded that Dr. Hite is not a pedophile.[11]

The district court devoted most of its decision to this first of Dr. Berlin's three opinions. While it is not free from doubt, the principal bases for exclusion appear to be these: first, that the testimony was not properly disclosed under Federal Rule of Criminal Procedure 16(b)(1)(C); second, that its probative value was substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403; and third, that the testimony was inadmissible because it rested on two bases that were not independently admissible.

## 1.    Dr. Berlin's Notice Of Expert Testimony Fully Satisfied Rule 16

Rule 16(b)(1)(C) requires a defendant to furnish a "written summary" of the expert's testimony, which "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The district court faulted Dr. Berlin's notice for failing to disclose that there is a correlation between his diagnosis and an intent to have sex with children. JA381-82. The court apparently believed that Dr. Berlin was obligated to disclose – in so many words – that there is a correlation between having a condition that is associated with a desire to have sexual contact with children, and an intent to have sexual contact with children. However "obvious[]" that correlation may be, JA381, the district

---

[11] Technically, his diagnosis comprehended several disorders, only one of which is pedophilia. JA194.

court held that Dr. Hite was required to specify it explicitly.  Because he failed to do so, the court excluded Dr. Berlin's diagnosis for failure to comply with Rule 16. JA382.

This holding is utterly baffling.  First, the requisite correlation was disclosed in the plain text of Dr. Berlin's notice – to have a "psychiatric disorder clinically associated with a desire to have sexual contact with children" simply *means* that one is more likely than the general population to have an intent to engage in sex with children.  Indeed, the same government attorney who prosecuted Dr. Hite acknowledged in *United States v. Beauchamp-Perez* that "if someone is a pedophile, it certainly suggests their desire to engage in sexual activity with children." JA641.

Moreover, Rule 16 is not part of the Code of Hammurabi.  It requires only a "summary" of the expert's opinions, and it serves the practical purposes of minimizing surprise, reducing the need for continuances, and enabling effective cross-examination. Fed. R. Crim. P. 16 advisory committee's note (1993 amendment).  Courts have consistently recognized that it should be interpreted flexibly.  *See United States v. Brown*, 592 F.3d 1088, 1090-91 (10th Cir. 2009) (noting that the expert notice had "substantially complied with Rule 16's requirements" even though it failed to "specifically describe the expert's methodology"); *United States v. Shepard*, 462 F.3d 847, 866 (8th Cir. 2006)

(holding that although Rule 16 notice was not provided, the defendant was sufficiently "made aware of the nature of [the] testimony"); *United States v. Finley*, 301 F.3d 1000, 1017 (9th Cir. 2002) (explaining that "disclosure met the minimum requirements of Rule 16(b)(1)(C) [because the defendant] supplied the government with sufficient notice of the general nature of Dr. Wicks' testimony"); *United States v. Cuellar*, 478 F.3d 282, 293-94 (5th Cir. 2007) (en banc), *rev'd on other grounds sub nom. Regalado Cuellar v. United States*, 553 U.S. 550 (2008) (explaining that the "purposes of Rule 16 were not frustrated" because the defendant was notified "that the government intended to call [the expert] and the subject of his expected testimony").

Dr. Berlin's disclosure in this case was indisputably sufficient to provide a "summary" of his opinions and indicate their general nature. The government has not claimed and could not credibly claim that it was surprised by the notion that pedophiles are more likely than the general population to intend to have sex with minors. *See United States v. Carson*, 486 F.3d 618, 619 n.1 (9th Cir. 2007) ("The expert witness's testimony, that drug dealers often possess weapons and drug paraphernalia, could not have been very surprising to defendant. . . ."). Nor did the government request a continuance, or suggest that its ability to cross-examine Dr. Berlin would in any way have been hampered. *See United States v. Ortega*, 150 F.3d 937, 943 (8th Cir. 1998) (a party's complaints of prejudice "ring hollow in

30

light of [its] failure even to request a continuance"); *United States v. Andrus*, 383 F. App'x 481, 483 (5th Cir. 2010) (finding it significant that a party was able to "effectively cross-examine[]" the other side's expert).

In all events, outright preclusion of expert testimony is an "extreme" sanction, *United States v. Brown*, 592 F.3d 1088, 1090 n. 4 (10th Cir. 2009), that should be reserved for truly egregious notice violations. *See also Cuellar*, 478 F.3d at 294 (referring to exclusion as "the most extreme sanction possible" (internal quotation marks omitted)). "Because the Supreme Court has recognized that 'few rights are more fundamental than that of an accused to present witnesses in his own defense,' courts should use particular caution in applying the drastic remedy of excluding a witness." *Finley,* 301 F.3d at 1018 (quoting *Taylor v. Illinois*, 484 U.S. 400, 408 (1988)). As the First Circuit has observed, "most circuit court cases affirming exclusion in response to discovery violations involve willful conduct," and one circuit has even interpreted *Taylor* "to mean that exclusion is permissible only when the case involves misconduct." *Bowling v. Vose*, 3 F.3d 559, 561-62 (1st Cir. 1993).

This Circuit has held that while bad faith is "not a prerequisite to exclusion," it is "an important factor." *United States v. Johnson*, 970 F.2d 907, 911 (D.C. Cir. 1992). In this case, there is not even a hint of bad faith or willful misconduct. Moreover, there is no practical justification for exclusion. The judge's opinion

was released eleven days before trial, leaving ample time for less drastic procedures – such as allowing the government to conduct *voir dire* with Dr. Berlin to explore his "new" testimony.  *See United States v. McLean*, 715 F.3d 129, 142 (4th Cir. 2013) (noting that a Rule 16 violation was properly remedied by allowing the government to conduct *voir dire during the trial*).

Indeed, that is precisely what the district court was willing to do in this case – for the *government's* expert.   The government was allowed to put in *two* supplemental notices disclosing new expert testimony, one of which came *after* Dr. Berlin's testimony was excluded in its entirety.  JA236, 388.  The defense was given only one opportunity to explore this newly disclosed testimony: a *voir dire* at the beginning of trial.  JA657-96.  Even after the *voir dire*, however, it was not clear to the court what the basis of the expert's testimony was.  As the judge put it, the government's expert was "relying on some research, but could not remember what it was," and "it would be helpful . . . that she figure out what she's talking about."  JA744.  It was not until the third day of trial that the government produced the purported basis of the testimony – an article that seemed to contradict the expert's position.  JA804-05.  The district court declined to review the article and allowed the expert to testify.  JA805-10.  No such flexibility was extended to Dr. Berlin.

32

And this is still not all.  Even if Dr. Berlin could not testify to the relationship between pedophilia and the likelihood of being sexually interested in children, it would still be improper to prevent him from testifying to his diagnosis. The connection between the diagnosis and the relevant question – Dr. Hite's sexual interest in children – is so obvious that a jury could make it without expert help. *See* JA637 (defense lawyer noting that "it's common knowledge that a pedophile is more likely to engage in sex with a child," and Judge Bates observing that "[i]t's almost definitional").

### 2.     *Dr. Berlin's Diagnosis Should Not Have Been Excluded Under Rule 403*

#### a.     *The diagnosis is highly probative.*

It is all but self-evident that Dr. Berlin's diagnosis has enormous probative value in this case.  As the district court noted, Dr. Hite's conduct was largely undisputed, making his intent the central question of the case.  JA364.  The question for the jury was this:  Did Dr. Hite genuinely intend to persuade minors to engage in sexual acts with him?  Clearly, he would be much more likely to intend to do so if he had a sexual interest in children than if he did not.[12]  That is why the government began its closing argument by practically chanting the word "interest":

---

[12] As Judge Bates explained in *Beauchamp-Perez*, "[I]t is relevant and admissible under the rules of evidence to allow Dr. Berlin to testify as to whether the defendant meets those various criteria for pedophilia."  JA 645.

"We're here because of the interest, interest in sexual activity with minors, a girl and a boy.  Interest of the defendant, Paul David Hite."  JA814.

That is also why the government sought to introduce the relatively small amount of child pornography found on Dr. Hite's computer.  In admitting that evidence, despite its obvious potential for unfair prejudice, the district court relied heavily on the significance of Dr. Hite's possible sexual attraction to children.  The court pointed to this Court's decision in *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003), which held that evidence of defendant's sexual contact with teenagers was probative of his intent to engage in unlawful sexual activity with minors.  *Id.* at 661-62.  The district court explained that "the underlying principle in *Long*, reflected in jurisprudence from numerous other Circuits . . . is that *evidence of a defendant's sexual attraction to children . . . is probative of the specific intent element of criminal statutes involving sexual activity with minors*." JA325 (emphasis added).

It follows that expert testimony of the *absence* of sexual attraction to children is likewise probative of the *lack* of specific intent under Section 2422(b).  And yet – inexplicably – the district court held that Dr. Berlin's diagnosis to that effect had "limited probative value."  JA380.  It reasoned, first, that Dr. Berlin's proffered testimony (that Dr. Hite did not have an interest in sex with children) was too far removed from "the statutory *mens rea* of an intent to coerce or persuade a

34

minor." JA380. Respectfully, that is simply unfathomable. As noted, the district court admitted evidence of child pornography precisely because it regarded "sexual[] attract[ion] to children" as "probative of [Dr. Hite's] intent to coerce or entice the minors." JA385. The same obvious connection amply justified this aspect of Dr. Berlin's testimony.[13]

The court's second Rule 403 rationale is odder still. The court suggested that the probative value of Dr. Berlin's testimony was limited because "the jury would have no way to evaluate the Defendant's absolute (as opposed to relative) intent to have sexual contact with children." JA379. The government did not advance this argument, and for good reason: it simply cannot be squared with the very *definition* of relevance – a "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The district court's reasoning would thus have come as a surprise to the *Long* court and to every other court that has admitted evidence of the defendant's interest in children because the evidence made it *more likely* that the defendant would commit the specific intent sex crime against the minor.[14] It also directly contradicts the district court's own

---

[13] While Rule 403 does afford some discretion to the district court, it is a commonplace that such discretion "must be applied evenhandedly." *United States v. Sellers*, 566 F.2d 884, 886 (4th Cir. 1977); *see Goldberg v. Nat'l Life Ins. Co. of Vermont*, 774 F.2d 559, 565 (2d Cir. 1985).

[14] As the court itself noted, "at least five Circuits have found the relevance of evidence of a defendant's sexual attraction to children in section 2422(b)

rationale for admitting the child pornography: namely, that it makes it *more likely* than it otherwise would be that Dr. Hite is sexually interested in children.  JA325.

      b.    *The probative value of the diagnosis is not substantially outweighed by the danger of unfair prejudice.*

Only an extraordinary amount of prejudice could "substantially outweigh[]" the probative value of Dr. Berlin's testimony.  *See United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) (explaining that Rule 403 "tilts . . . toward the admission of evidence in close cases" (internal quotation marks omitted)).  In this case, Dr. Berlin's diagnosis posed *no* prejudice, much less "substantial" prejudice, and the district court's contrary conclusion is unsustainable.[15]

The district court first restated its view that Dr. Berlin's proffered diagnosis was "several steps removed from the statutory intent," and would thereby sow confusion among the jury.  JA380.  For the reasons noted above, that rationale

---

prosecutions to be so obvious as to not warrant discussion."  JA326 (citing *United States v. Lewis*, 318 F. App'x 1, 2 (D.C. Cir. 2009); *United States v. Cooke*, 675 F.3d 1153, 1157 (8th Cir. 2012); *United States v. Wolford*, 386 F. App'x 479, 484 (5th Cir. 2010); *United States v. Godwin*, 399 F. App'x 484, 489-90 (11th Cir. 2010)).

[15] The district court itself observed that evidence bearing on "[Dr. Hite's] intent, which is likely to be the central issue in the case," has higher probative value and is less likely to be unduly prejudicial.  JA341.  By the time the defense offered such evidence, however, the district court concluded otherwise.

makes no sense and, what is worse, cannot be reconciled with the district court's willingness to admit child pornography to prove statutory intent.[16]

The only other source of confusion identified by the district court is that Dr. Berlin disclosed "numerous diagnostic criteria and relevant behavior," which could potentially be too difficult for the jury to evaluate.  JA380-81.  This is another argument the government did not advance, again not surprisingly because it is baseless.  The criteria and behavior identified by Dr. Berlin are simply the accepted diagnostic tools for the relevant disorders, as set out in DSM-IV.  JA196.  Without applying those criteria, it would be impossible for a mental health professional to reach a diagnosis.

The district court's concern about "diagnostic criteria" and "relevant behavior" is also impossible to square with this Court's decision in *Long*.  There, the Court endorsed expert testimony "concerning sexual exploitation of children, including the typology, identification, characteristics and strategies of a sexual offender."  *Long*, 328 F.3d at 665.  The testimony was at least as complex as Dr. Berlin's, but it was necessary to "aid the jury in understanding a pattern of

---

[16] Moreover, the court did not even consider whether any purported confusion could be alleviated through limiting instructions that explained the purpose for admitting Dr. Berlin's diagnosis.  By contrast, the district court had no reticence about deploying limiting instructions when it came to the *government's* evidence.  *See* JA341 ("[T]he Court shall instruct the jury as to the limited purposes for which the evidence is admitted, at the time of admission and in the final instructions, which substantially limits any risk of unfair prejudice.").

behavior beyond its ken." *Id.* at 666. Just the same holds here. *See also United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999) (explaining that expert testimony was "critical in dispelling" commonly held stereotypes of a child molester).

### 3. Dr. Berlin's Diagnosis Is Not Undermined By Its Purportedly Inadmissible Bases

In reaching his diagnosis, Dr. Berlin took into account a number of factors. JA196-97. The district court found two of the opinion's bases to be inadmissible if offered into evidence in their own right. The first was that Dr. Berlin had "seen no evidence that Dr. Hite has a prior history as an adult of pedophilic behaviors with a child." JA196. The second was Dr. Berlin's review of the chats between Dr. Hite and the undercover officer. JA197. Having excluded those bases of Dr. Berlin's diagnosis, the Court felt "compelled to exclude" the diagnosis itself. JA378.

This rationale, which was not advanced by the government, runs afoul of Federal Rule of Evidence 703. That rule provides that an expert may base an opinion on facts or data that are inadmissible "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *See Simpson v. Socialist People's Libyan Arab Jamahiriya*, 470 F.3d 356, 362 (D.C. Cir. 2006) (noting that Rule 703 does not "limit an expert to consideration of admissible evidence in forming an opinion").

38

Here, Dr. Berlin relied on the sort of clinical evidence typically used by psychiatrists to reach their verdicts. The government did not argue and the district court did not find that specialists in sexual disorders *do not* routinely rely on such evidence. As such, Dr. Berlin's diagnosis was unquestionably admissible, even if the *bases* of that diagnosis were not. *See United States v. Smith*, 964 F.2d 1221, 1224 (D.C. Cir. 1992) (concluding that an expert report based on inadmissible hearsay evidence was properly admitted because forensic chemists routinely relied on that sort of evidence).[17]

In any event, both challenged bases for Dr. Berlin's diagnosis *were* admissible.

### a. *The lack of prior sexual activity with children*

The government contended below that Dr. Berlin's proffered testimony about Dr. Hite's lack of prior sexual activity with children was inadmissible propensity evidence under Federal Rule of Evidence 404. The defense responded that this was not propensity evidence at all because it was being used to prove Dr. Hite's *intent*, not his *actions*. JA221. This well-settled distinction is supported both by the text of Rule 404 itself, and by abundant case law. *See, e.g.*, *United*

---

[17] The same principle applies to the court's mistaken exclusion of Dr. Berlin's diagnosis on the ground that it was premised on too many criteria and behaviors. *See supra* at 37. Even if the diagnosis were premised on criteria that were themselves inadmissible (because they were too confusing), the diagnosis *itself* would still be admissible under Rule 703.

*States v. Springs*, 936 F.2d 1330, 1333 (D.C. Cir. 1991) (holding that demonstrating intent "is a proper purpose not forbidden by Rule 404"); *United States v. Payne*, 805 F.2d 1062, 1065 (D.C. Cir. 1986) ("This evidence was squarely relevant on the issue of intent and thus properly admitted.").

Not surprisingly, the government offered no further argument in reply. JA238.  And yet, the district court held that Dr. Hite – not the government – "fail[ed] to respond" to this argument.  JA376.  The court therefore "treat[ed] this argument as conceded."  JA376.  That is completely mistaken.

So, too, was the district court's treatment of Dr. Hite's alternative argument that the absence of prior sexual history with children was separately admissible under Rule 404(a)(2)(A) as "evidence of the defendant's pertinent trait," here an interest in children or lack thereof.  JA221-22.  Once again, the government offered no response below.  The district court stated that "[t]he Defendant does not contend that 'prior sexual contact with a child' is a relevant character trait." JA376-77.  This observation is true, but irrelevant:  Prior sexual contact with a child is *evidence* of the pertinent trait.  And "evidence" of the character trait – here, an "interest" in having sex with minors, which the district court acknowledged as

40

"relevant" when it admitted pornography *against* Dr. Hite – is precisely what Rule 404(a)(2)(A) allows a defendant to offer.[18]

     b.    *Dr. Berlin's evaluation of the chats*

The district court concluded that Dr. Berlin's evaluation of the chats amounted to an impermissible "interpretation" that Dr. Hite was not "serious" in his discussions with the undercover officer. JA368-70. In the court's view, such an interpretation runs afoul of Rule 704(b), because it opines on the ultimate issue in the case. JA370.

Not so. Dr. Berlin did not "interpret" the chats at all; he simply evaluated them as part of the clinical evidence he considered in reaching his diagnosis of Dr. Hite. Based in part on the uncontested fact that the chats were "communications between consenting adults," Dr. Berlin concluded that the chats "do[] not appear to be reflective of any interest in actually being sexual with a child." JA197. Far from opining on the ultimate issue of whether Dr. Hite intended to persuade a minor to engage in sexual activity, Dr. Berlin merely reached a clinical conclusion concerning Dr. Hite's sexual interests.

Moreover, the court appeared to acknowledge that this testimony would be admissible as part of a general explanation of sexual fantasies on the Internet – a

---

[18] For both of the excluded bases for Dr. Berlin's diagnosis, the court also added a cursory Rule 403 analysis finding each to be substantially more prejudicial than probative. JA375-78. These are no more persuasive, however, than the Rule 403 analysis of the diagnosis itself.

rationale endorsed by numerous courts.  JA370-71 (citing cases).  The court insisted, however, that "any reference to 'general' testimony" concerning Internet and sexual fantasy was "wholly absent from [Dr. Berlin's] disclosure."  JA370. This is another indefensible application of Rule 16.

The court simply ignored the actual content of the notice.  The document set out the difference between sexual fantasy and reality, JA195, noted that Dr. Berlin would "offer testimony with respect to the role of the Internet as it relates to sexual behavior," JA195, and explained with reference to the chats that "eroticized conversations with . . . adult males about being sexual with children . . . [do] not suggest an actual real-life interest in behaving in such a fashion."  JA197.  This is amply sufficient to disclose general testimony about the role of the Internet in sexual fantasy – especially under the pragmatic standards of Rule 16.  And once again, exclusion would be an entirely unreasonable remedy even if a violation of Rule 16 could be found here.

### C.    Dr. Berlin's General Testimony Concerning Psychiatric Disorders Was Admissible

In addition to his diagnosis of Dr. Hite, Dr. Berlin was prepared to give general testimony about "the clinically significant difference between [those who have] a desire to engage in actual sexual contact with minors and those who fantasize or role play involving sexual contact with minors."  JA194.  This information would have been helpful to the jurors, many of whom likely held the

42

widespread intuitive (but incorrect) belief that a person who has explicit and extensive sexual fantasies about children must also be interested in acting them out.

Indeed, the government did its best to blur fantasy and reality. In the rebuttal portion of the closing argument, the prosecutor argued as follows:

> There's a difference between fantasizing about something incessantly, and then when you're given the perfect opportunity for it to come true, are we supposed to believe that the defendant didn't want that? That's like me fantasizing about winning the lottery, and then turning around and saying: But I really don't want that to happen.

JA825. In anticipation of this sort of argument, it was crucial for Dr. Hite to inform the jury that in fact there *are* people who incessantly fantasize about sex with children and yet have no intent or desire to act out those fantasies.

Once again, the district court slammed the door. And why? Because although Dr. Hite disclosed the *content* of this proffered testimony, he failed to explain the "independent relevance" of that testimony in his Rule 16 notice. JA383. But Rule 16 simply does not require a notice of expert testimony to disclose the "independent relevance" of proposed expert testimony.[19] *See* Fed. R. Crim. P. 16(b)(1)(C) (requiring a "summary [which describes] the witness's

---

[19] Not surprisingly, the government did not make any such argument below. Indeed, in *Beauchamp-Perez*, the government never objected to virtually identical expert testimony, and Judge Bates allowed Dr. Berlin to give it. JA622, 646. There is no justification for a different result here.

opinions, the bases and reasons for those opinions, and the witness's qualifications").

For good measure, the district court then added a Rule 403 ruling "for the same reasons" it had excluded Dr. Berlin's diagnosis of Dr. Hite.  JA383-84.  As explained above, the diagnosis was likewise admissible, but in all events the "same reasons" could not warrant exclusion of Dr. Berlin's more general testimony distinguishing fantasy from an intent to engage in actual misconduct.[20]

### D. Dr. Berlin's Testimony Concerning Child Pornography Was Admissible

As noted above, the district court allowed the government to introduce the relatively small amount of child pornography found in the thumbcache of Dr. Hite's computer.  The government parlayed the visceral impact of those images for all it was worth.  In closing argument, the prosecutor told the jury:  "I'm sorry you had to see [the pictures] in the first instance.  And I hope you never have to see anything like this again.  But the reason this was shown to you was because – so you could get an idea of what was in the defendant's head."  JA820.

_____

[20]  Dr. Berlin's proposed testimony would not have included any conclusion by Dr. Berlin as to whether or not Dr. Hite had the intent to engage in sexual activity with actual minors.  Rather, his proffered testimony would have explained that engaging in fantasy does not equate with such intent and left it to the jury to determine whether or not Dr. Hite in fact possessed such an intent.

44

As Judge Bates recognized in *Beauchamp-Perez,* it is crucial to give the defendant opportunity to rebut such testimony. There, the government itself conceded that Dr. Berlin "can certainly testify" that possession of child pornography is not necessarily indicative of an intent to have sex with a minor. JA611.

In this case, however, the district court excluded this aspect of Dr. Berlin's testimony as well. The court seemed to acknowledge that Dr. Berlin *would* have been allowed to testify to the relationship between child pornography and sexual *interest* in children; after all, the existence of such a relationship was the premise on which the district court had admitted the pornography in the first place. JA385. The court insisted, however, that Dr. Hite had failed to disclose that Dr. Berlin would opine on any such relationship; instead, Dr. Hite supposedly disclosed only testimony suggesting that many viewers of child pornography do not actually have sexual *contact* with children. JA384-85.

Even if this were correct, there is obviously a close relationship between having sexual *contact* with children and having a sexual *interest* in children, so the court's characterization of that testimony as "marginally relevant" is dubious at best. JA385. But there is little need to dwell on this point, because the court *simply overlooked* plentiful and specific disclosures in Dr. Berlin's notice about the relationship between viewing child pornography and sexual *interest* in children.

45

As the Rule 16 proffer explained, "those who desire to engage in sexual activity with a child" tend to "amass[] large collections of child pornography over a period of many years," "purchase[] access to paid websites or other commercial sources of child pornography," and "treasure these collections and prefer not to be without it for any prolonged period."  JA194, 196-97.  Dr. Berlin also explained that there was "no evidence of such obsessive collection of child pornography by Dr. Hite," and that therefore the fact that "Dr. Hite *may* have received child pornography in the past . . . would not constitute evidence of a desire actually to be sexual with a child."  JA197.  In short, Dr. Hite put forward a clear and detailed explanation of Dr. Berlin's expert opinion that the images on Dr. Hite's computer did not reflect a genuine sexual interest in minors.

Needless to say, no Rule 16 values are advanced by this exclusion.  The government never claimed surprise, nor did it demand a continuance or profess any difficulty in cross-examining Dr. Berlin.  The use of the most extreme Rule 16 penalty – exclusion – with respect to testimony that was pellucidly disclosed *and* unchallenged by the government on Rule 16 grounds is indefensible several times over.

**E.    Each Of These Errors Was Highly Prejudicial; Together, They Were Devastating**

As detailed above, the court erroneously excluded Dr. Berlin's diagnosis of Dr. Hite; his general testimony about sexual disorders; and his testimony about the

46

relationship between viewing (as opposed to collecting) child pornography and having a sexual interest in children. Each of those areas of testimony would have been immensely helpful to the defense, and each of the individual errors was highly prejudicial.[21]

Together, though, the errors were simply devastating. Dr. Berlin was not allowed to testify that Dr. Hite did not fit the psychological profile of someone who was sexually interested in children; *or* that there are people who fantasize about sex with children but do not want to engage in it; *or* that Dr. Hite's viewing of child pornography is not consistent with the patterns of those who genuinely wish to have sex with children. Put another way, Dr. Berlin was not allowed to challenge *any* of the misconceptions and stereotypes that the government eagerly cultivated in the jury. Even without the testimony of a leading authority on sexual disorders, it took the jury two days (after a three-day trial) to decide that Dr. Hite's chats were not merely a fantasy. If Dr. Berlin had been allowed to testify, the jury could easily have returned a different verdict – and likely would have.

_____

[21] As noted above, the exclusion of Dr. Berlin's testimony implicates Dr. Hite's fundamental Sixth Amendment right to present witnesses on his behalf. *See Johnson*, 970 F.2d at 910. As such, these were errors "of constitutional dimension," which are harmless only if "it appears 'beyond a reasonable doubt that [the errors] did not contribute to the verdict obtained.'" *United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). But the errors are clearly prejudicial even under the conventional harmless error standard, so this Court need not reach the issue of which standard applies here.

## IV.    THE COURT ERRONEOUSLY BARRED DR. HITE FROM IMPEACHING THE GOVERNMENT'S KEY WITNESS

The government's primary witness was Timothy Palchak, the undercover detective who communicated with Dr. Hite.  In addition to providing a lengthy play-by-play of their conversations, Palchak opined that Dr. Hite was not just fantasizing in the chats.  JA714, 755-56, 776-77.  To support that crucial opinion, Palchak described his techniques for determining whether Hite was serious.  *See, e.g.*, JA702 (explaining that he gave Dr. Hite "a decision to make" and that if Dr. Hite was "about fantasy then that's his time to really say so").  Palchak also dismissed Dr. Hite's repeated insistence that only two adults would be meeting, calling it mere "self-serving defense statements."  JA737.

The testimony of this experienced undercover officer played a crucial role in the trial.  Palchak was, in effect, the only "expert" the jury heard from.  As it turns out, however, the detective had given sharply different testimony in two recent cases, casting serious doubt on his conclusions about Dr. Hite.

In *Beauchamp-Perez*, Palchak was called upon to discuss precisely the same issue: whether the defendant's chats with him were mere fantasy.  Palchak offered the following general statement of how this question can be answered: "[O]nce a person leaves his computer, especially after 24 hours, leaves his computer and walks out the door to hop on the Metro anywhere else, the fantasy ends."  JA509.

48

In a later case, *United States v. Nitschke*, again addressing the same issue, Palchak re-affirmed the importance he attaches to the defendant's travel.  Counsel asked him: "Now, I think your response has been in the past that while [sic] someone travels down to meet you fantasy time is over, right?"  Palchak answered: "Sounds like that's something I would have testified to."  JA513.

Armed with this prior testimony, Dr. Hite's counsel sought to impeach Palchak's claim that Dr. Hite was not engaged in fantasy.  Dr. Hite did *not* travel to meet Palchak; instead, he was arrested in his hometown on the very evening he was supposed to have met Palchak.  This line of questioning was crucial to the defense in two respects – first, by undermining Palchak's credibility, and second, by confirming the defense that Appellant had no intent to persuade a minor.

But the district court shut the door.  JA795-97.

### A.      Standard Of Review

The district court has discretion to "disallow cross-examination that is repetitive, irrelevant, unduly prejudicial, collateral to the issues in the trial, or outside the scope of direct examination."  *Harbor Ins. Co. v. Schnabel Found. Co.,* 946 F.2d 930, 935 (D.C. Cir. 1991).  But "discretion is not unlimited."  *Id.* "Particularly where a party is seeking to impeach a witness whose credibility could have an important influence on the outcome of the trial, the district court should be cautious in limiting cross-examination."  *Id.*

49

### B.    The District Court Erroneously Truncated The Cross-Examination Of Detective Palchak

This Court has been very clear that a decision to limit cross-examination is not to be made lightly.  In *Harbor*, this Court held that it was an abuse of discretion for the district court to cut off cross-examination of an expert witness, even though the cross examination would have been "tedious and time-consuming."  946 F.2d at 935.  Similarly, in *United States v. Pryce*, 938 F.2d 1343 (D.C. Cir. 1991), this Court concluded that the district court had abused its discretion in "limit[ing] cross-examination on matters affecting credibility."  *Id.* at 1345.  Indeed, the Court's cases insist on caution when a witness's credibility is at stake.  *United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006).  And the "very wide latitude that should be accorded defense counsel in a criminal case" is especially crucial when "the Government's principal witness is involved."  *United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (internal quotation marks omitted); *see also United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) ("The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004).

Only the weightiest reasons could justify truncating the impeachment of Detective Palchak.  Here, there were no substantial reasons at all.  The district

court did not suggest that the proffered cross-examination would have been repetitive, irrelevant, or unduly prejudicial, or that it would have fallen into any of the other categories that could justify the restriction. *Harbor,* 946 F.2d at 935. Instead, the district court identified two aspects of the prior testimony that, in its view, justified preclusion.

First, the district court noted that the earlier statements came "within the context of a case where travel actually is important." JA796. This was apparently a reference to the fact that in *Nitschke* and *Beauchamp-Perez* the charged offense had travel as an element, whereas in this case "that's not the charge." JA796. But Palchak's prior testimony on when fantasy ends and intent to have sex begins did not turn on the niceties of the underlying charge. And any possible jury confusion could, in any event, have been dispelled by an instruction or by the government's redirect examination of the witness.

Second, the court observed that "the chats that they talk about [in the other cases] are specific" and "they're not all the same as in here." JA796. True, the chats were not the same; how could they be? But Palchak's prior testimony addressed, generally, the basis on which Palchak distinguishes fantasy from reality. There is no reason why the approach would not apply just as well in this case.

In short, the district court did not identify *any* plausible reason to limit this crucial line of questioning. Still less did the court provide a reason sufficient to

51

outweigh the "very wide latitude" that must be given to defense counsel when testing the credibility of the government's principal witness. *Lin*, 101 F.3d at 768.

### C.    The Error Was Highly Prejudicial

The preclusion of this line of questioning was highly prejudicial to the defense.[22]  Palchak's prior testimony would have undermined his credibility.  It also would have provided substantive support for the defense's central argument: that Dr. Hite did not harbor an intent to entice a minor.  In a case in which the defendant's intent – fantasy vs. reality – was the *only* issue in dispute, it was prejudicial error to preclude this impeachment.

Of course, the district court did not simply foreclose impeachment of the government's putative expert.  The court also foreclosed the defense from calling a (real) expert of its own – Dr. Berlin.  Each of these errors is independently reversible.  Taken together, they left a profoundly uneven playing field at trial.

## V.    IF THIS CASE IS NOT DISMISSED OUTRIGHT, IT SHOULD BE ASSIGNED TO A DIFFERENT DISTRICT JUDGE

As discussed in Section I, Dr. Hite's conduct is not prohibited by Section 2422(b).  As such, the charges against him should be dismissed.  If, however, this

---

[22] Once again, this error is "of constitutional dimension," *Powell*, 334 F.3d at 45, because the limitation imposed by the district court threatened Dr. Hite's Sixth Amendment right to cross-examine opposing witnesses.  Accordingly, this question should be analyzed under the constitutional harmless error standard.  *Id.* But the error was clearly prejudicial even under the conventional standard, so this Court need not reach this issue.

Court is persuaded only to remand for a new trial, Dr. Hite respectfully – and mindful of the hurdle he faces – asks the Court to assign the matter to a different district judge.

This Court can reassign a case pursuant to its general supervisory power, 28 U.S.C. § 2106, as well as the recusal statute, 28 U.S.C. § 455(a). *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995). The Court does not make this decision easily, but in some cases it proves necessary. *Id.* at 1463-65; *Cobell v. Kempthorne*, 455 F.3d 317, 335 (D.C. Cir. 2006). This is such a case.

As demonstrated above, the district court established a disconcerting pattern of ruling against Dr. Hite on evidentiary and instructional issues, often without any plausible justification and frequently on grounds not even the government could bring itself to advance. Among the other errors, it adopted jury instructions which eliminated the central element of the statute, *see supra* at 20-22; it accused Dr. Hite of conceding an argument that in fact he persuasively answered, *see supra* at 40; it contradicted the plain text of Rule 703, *see supra* at 38-39; it repeatedly faulted Dr. Hite for failing to disclose proposed expert testimony from Dr. Berlin that he either explicitly disclosed or at least amply summarized, *see supra* at 28-31, 42, 45-46; and it barred Dr. Hite from cross-examining the government's key witness on a central issue in the case without any clearly articulated explanation, *see supra* at 48-52. Even more disturbingly, the district court frequently held Dr. Hite's

53

evidence to a higher standard than evidence proffered by the government, contradicting its own reasoning in the process, *see supra* at 32, 34-37 & nn.13-16, 45.

As this Court has observed, "a particular judicial ruling can be evidence of . . . bias or prejudice." *United States v. Barry*, 938 F.2d 1327, 1340 (D.C. Cir. 1991) (internal quotation marks omitted). That is precisely what this combination of rulings is – evidence that "could contribute to a reasonable observer's belief that [Dr. Hite] stands no chance of prevailing whatever the merits of [his] position." *Cobell*, 455 F.3d at 334. Moreover, a reasonable observer may well question whether the district court, addressing a case that involved troubling charges about which it is difficult for many to remain objective, "would have difficulty putting [its] previous views and findings aside on remand." *Microsoft*, 56 F.3d at 1465 (internal quotation marks omitted).

In light of the need to maintain "confidence that judicial decisions flow from the impartial application of law to fact, not from a judge's animosity toward a party," this Court should treat "this [as] one of those rare cases in which reassignment is necessary." *Cobell*, 455 F.3d at 335.

## CONCLUSION

For the reasons stated above, Defendant-Appellant respectfully requests that this Court reverse his conviction on both counts, and remand for dismissal of the indictment, or, in the alternative, for a new trial before a different district judge.

Dated: November 4, 2013                     Respectfully submitted,

/s/ Lawrence S. Robbins
Lawrence S. Robbins
Alex Potapov
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER, LLP
1801 K Street, N.W, Suite 411L
Washington, D.C.  20006
Phone: (202) 775-4501
lrobbins@robbinsrussell.com

Barry J. Pollack
MILLER AND CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C.  20005
Phone: (202) 626-5830
bpollack@milchev.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 13,276 words, excluding the parts of the brief permitted by Rule 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1) to be excepted from the word count.

/s/ Lawrence S. Robbins
Lawrence S. Robbins

## CERTIFICATE OF SERVICE

I hereby certify that, on November 4, 2013, I electronically filed the foregoing brief, together with the Joint Appendix filed concurrently with the brief, by using the appellate CM/ECF system, which will send notice of such filing to counsel for all parties and *amici*. In addition, I caused paper copies of the brief and Joint Appendix to be sent via Federal Express overnight delivery to the Clerk of Court's office and counsel for all parties and *amici*.

/s/ Lawrence S. Robbins
Lawrence S. Robbins

**ADDENDUM**

TABLE OF CONTENTS

5 U.S.C. § 6132

15 U.S.C. § 52

18 U.S.C. § 2241

18 U.S.C. § 2242

18 U.S.C. § 2243

18 U.S.C. § 2244

18 U.S.C. § 2423

18 U.S.C. § 2425

28 U.S.C. § 455

28 U.S.C. § 2106

29 U.S.C. § 433

Fed. R. of Crim. P. 16

Fed. R. Evid. 401

Fed. R. Evid. 403

Fed. R. Evid. 404

Fed. R. Evid. 703

Fed. R. Evid. 704

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart E. Attendance and Leave
        Chapter 61. Hours of Work (Refs & Annos)
          Subchapter II. Flexible and Compressed Work Schedules (Refs & Annos)
            ➡➡ § 6132. Prohibition of coercion

**(a)** An employee may not directly or indirectly intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce, any other employee for the purpose of interfering with--

  **(1)** such employee's rights under sections 6122 through 6126 of this title to elect a time of arrival or departure, to work or not to work credit hours, or to request or not to request compensatory time off in lieu of payment for overtime hours; or

  **(2)** such employee's right under section 6127(b)(1) of this title to vote whether or not to be included within a compressed schedule program or such employee's right to request an agency determination under section 6127(b)(2) of this title.

**(b)** For the purpose of subsection (a), the term "intimidate, threaten, or coerce" includes, but is not limited to, promising to confer or conferring any benefit (such as appointment, promotion, or compensation), or effecting or threatening to effect any reprisal (such as deprivation of appointment, promotion, or compensation).

CREDIT(S)

(Added Pub.L. 97-221, § 2(a)(2), July 23, 1982, 96 Stat. 232.)

Current through P.L. 113-36 approved 9-18-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

Westlaw.

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 15. Commerce and Trade
    Chapter 2. Federal Trade Commission; Promotion of Export Trade and Prevention of Unfair Methods of Competition
      Subchapter I. Federal Trade Commission (Refs & Annos)
      ➡➡ **§ 52. Dissemination of false advertisements**

(a) Unlawfulness

It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement--

  **(1)** By United States mails, or in or having an effect upon commerce, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, services, or cosmetics; or

  **(2)** By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics.

(b) Unfair or deceptive act or practice

The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in or affecting commerce within the meaning of section 45 of this title.

CREDIT(S)

(Sept. 26, 1914, c. 311, § 12, as added Mar. 21, 1938, c. 49, § 4, 52 Stat. 114; amended Jan. 4, 1975, Pub.L. 93-637, Title II, § 201(c), 88 Stat. 2193; Aug. 16, 1994, Pub.L. 103-297, § 8, 108 Stat. 1550.)

Current through P.L. 113-36 approved 9-18-13
Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

United States Code Annotated Currentness
   Title 18. Crimes and Criminal Procedure (Refs & Annos)
      Part I. Crimes (Refs & Annos)
        ➡ Chapter 109A. Sexual Abuse (Refs & Annos)
➡ **§ 2241. Aggravated sexual abuse**

**(a) By force or threat.**--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly causes another person to engage in a sexual act--

**(1)** by using force against that other person; or

**(2)** by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;

or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

**(b) By other means.**--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly--

**(1)** renders another person unconscious and thereby engages in a sexual act with that other person; or

**(2)** administers to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby--

   **(A)** substantially impairs the ability of that other person to appraise or control conduct; and

   **(B)** engages in a sexual act with that other person;

or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

**(c) With children.**--Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, or in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

18 U.S.C.A. § 2241																			Page 2

sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life. If the defendant has previously been convicted of another Federal offense under this subsection, or of a State offense that would have been an offense under either such provision had the offense occurred in a Federal prison, unless the death penalty is imposed, the defendant shall be sentenced to life in prison.

**(d) State of mind proof requirement.**--In a prosecution under subsection (c) of this section, the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years.

Westlaw.

18 U.S.C.A. § 2242                                                                    Page 1

United States Code Annotated Currentness
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      ➡ Chapter 109A. Sexual Abuse (Refs & Annos)
➡ **§ 2242. Sexual abuse**

Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly--

**(1)** causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or

**(2)** engages in a sexual act with another person if that other person is--

  **(A)** incapable of appraising the nature of the conduct; or

  **(B)** physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Westlaw*

18 U.S.C.A. § 2243                                                                                          Page 1

United States Code Annotated Currentness
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      ➡ Chapter 109A. Sexual Abuse (Refs & Annos)
➡ **§ 2243. Sexual abuse of a minor or ward**

**(a) Of a minor.**--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who--

**(1)** has attained the age of 12 years but has not attained the age of 16 years; and

**(2)** is at least four years younger than the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

**(b) Of a ward.**--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who is--

**(1)** in official detention; and
**(2)** under the custodial, supervisory, or disciplinary authority of the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

**(c) Defenses.**--**(1)** In a prosecution under subsection (a) of this section, it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant reasonably believed that the other person had attained the age of 16 years.

**(2)** In a prosecution under this section, it is a defense, which the defendant must establish by a preponderance of the evidence, that the persons engaging in the sexual act were at that time married to each other.

**(d) State of mind proof requirement.**--In a prosecution under subsection (a) of this section, the Government need not prove that the defendant knew--

**(1)** the age of the other person engaging in the sexual act; or

**(2)** that the requisite age difference existed between the persons so engaging.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw.**

18 U.S.C.A. § 2244                                                                                Page 1

United States Code Annotated Currentness
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
      Part I. Crimes (Refs & Annos)
         ➡ Chapter 109A. Sexual Abuse (Refs & Annos)
➡ § 2244. Abusive sexual contact

   **(a) Sexual conduct in circumstances where sexual acts are punished by this chapter.**--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in or causes sexual contact with or by another person, if so to do would violate--

   **(1)** subsection (a) or (b) of section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than ten years, or both;

   **(2)** section 2242 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than three years, or both;

   **(3)** subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both;

   **(4)** subsection (b) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both; or

   **(5)** subsection (c) of section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title and imprisoned for any term of years or for life.

   **(b) In other circumstances.**--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both.

   **(c) Offenses involving young children.**--If the sexual contact that violates this section (other than subsection (a)(5)) is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

18 U.S.C.A. § 2423                                                                                    Page 1


**Effective: March 7, 2013**


United States Code Annotated Currentness
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 117. Transportation for Illegal Sexual Activity and Related Crimes (Refs & Annos)
        ➡➡ **§ 2423. Transportation of minors**


**(a) Transportation with intent to engage in criminal sexual activity.**--A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.


**(b) Travel with intent to engage in illicit sexual conduct.**--A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.


**(c) Engaging in illicit sexual conduct in foreign places.**--Any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.


**(d) Ancillary offenses.**--Whoever, for the purpose of commercial advantage or private financial gain, arranges, induces, procures, or facilitates the travel of a person knowing that such a person is traveling in interstate commerce or foreign commerce for the purpose of engaging in illicit sexual conduct shall be fined under this title, imprisoned not more than 30 years, or both.


**(e) Attempt and conspiracy.**--Whoever attempts or conspires to violate subsection (a), (b), (c), or (d) shall be punishable in the same manner as a completed violation of that subsection.


**(f) Definition.**--As used in this section, the term "illicit sexual conduct" means (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

18 U.S.C.A. § 2423                                                                                                           Page 2

**(g) Defense.**--In a prosecution under this section based on illicit sexual conduct as defined in subsection (f)(2), it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant reasonably believed that the person with whom the defendant engaged in the commercial sex act had attained the age of 18 years.

CREDIT(S)

(June 25, 1948, c. 645, 62 Stat. 812; Feb. 6, 1978, Pub.L. 95-225, § 3(a), 92 Stat. 8; Nov. 7, 1986, Pub.L. 99-628, § 5(b)(1), 100 Stat. 3511; Sept. 13, 1994, Pub.L. 103-322, Title XVI, § 160001(g), 108 Stat. 2037; Dec. 23, 1995, Pub.L. 104-71, § 5, 109 Stat. 774; Oct. 11, 1996, Pub.L. 104-294, Title VI, §§ 601(b)(4), 604(b)(33), 110 Stat. 3499, 3508; Oct. 30, 1998, Pub.L. 105-314, Title I, § 103, 112 Stat. 2976; Nov. 2, 2002, Pub.L. 107-273, Div. B, Title IV, § 4002(c)(1), 116 Stat. 1808; Apr. 30, 2003, Pub.L. 108-21, Title I, §§ 103(a)(2)(C), (b)(2)(B), 105, 117 Stat. 652, 653, 654; July 27, 2006, Pub.L. 109-248, Title II, § 204, 120 Stat. 613; Pub.L. 113-4, Title XII, § 1211(b), Mar. 7, 2013, 127 Stat. 142.)

Current through P.L. 113-36 approved 9-18-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



**Effective: October 30, 1998**

United States Code Annotated Currentness
   Title 18. Crimes and Criminal Procedure (Refs & Annos)
      Part I. Crimes (Refs & Annos)
         Chapter 117. Transportation for Illegal Sexual Activity and Related Crimes (Refs & Annos)
      ➡➡ **§ 2425. Use of interstate facilities to transmit information about a minor**

Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly initiates the transmission of the name, address, telephone number, social security number, or electronic mail address of another individual, knowing that such other individual has not attained the age of 16 years, with the intent to entice, encourage, offer, or solicit any person to engage in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 5 years, or both.

CREDIT(S)

(Added Pub.L. 105-314, Title I, § 101(a), Oct. 30, 1998., 112 Stat. 2975.)

Current through P.L. 113-36 approved 9-18-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part I. Organization of Courts (Refs & Annos)
      Chapter 21. General Provisions Applicable to Courts and Judges

28 U.S.C.A. § 455

§ 455. Disqualification of justice, judge, or magistrate judge

Currentness

**(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**(b)** He shall also disqualify himself in the following circumstances:

  **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

  **(2)** Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

  **(3)** Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

  **(4)** He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

  **(5)** He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

    **(i)** Is a party to the proceeding, or an officer, director, or trustee of a party;

    **(ii)** Is acting as a lawyer in the proceeding;

    **(iii)** Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge,

§ 455. Disqualification of justice, judge, or magistrate judge, 28 USCA § 455

spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 908; Dec. 5, 1974, Pub.L. 93-512, § 1, 88 Stat. 1609; Nov. 6, 1978, Pub.L. 95-598, Title II, § 214(a), (b), 92 Stat. 2661; Nov. 19, 1988, Pub.L. 100-702, Title X, § 1007, 102 Stat. 4667; Dec. 1, 1990, Pub.L. 101-650, Title III, § 321, 104 Stat. 5117.)

Notes of Decisions (1529)

28 U.S.C.A. § 455, 28 USCA § 455
Current through P.L. 113-36 approved 9-18-13

**End of Document**                                      © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw

28 U.S.C.A. § 2106                                                                                     Page 1

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
      Part V. Procedure
        Chapter 133. Review--Miscellaneous Provisions (Refs & Annos)
      ➡➡ **§ 2106. Determination**

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 963.)

Current through P.L. 113-36 approved 9-18-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
   Title 29. Labor
     Chapter 11. Labor-Management Reporting and Disclosure Procedure (Refs & Annos)
      Subchapter III. Reporting by Labor Organizations, Officers and Employees of Labor Organizations, and Employers
       ➡➡ **§ 433. Report of employers**

(a) Filing and contents of report of payments, loans, promises, agreements, or arrangements

Every employer who in any fiscal year made--

   **(1)** any payment or loan, direct or indirect, of money or other thing of value (including reimbursed expenses), or any promise or agreement therefor, to any labor organization or officer, agent, shop steward, or other representative of a labor organization, or employee of any labor organization, except (A) payments or loans made by any national or State bank, credit union, insurance company, savings and loan association or other credit institution and (B) payments of the kind referred to in section 186(c) of this title;

   **(2)** any payment (including reimbursed expenses) to any of his employees, or any group or committee of such employees, for the purpose of causing such employee or group or committee of employees to persuade other employees to exercise or not to exercise, or as the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing unless such payments were contemporaneously or previously disclosed to such other employees;

   **(3)** any expenditure, during the fiscal year, where an object thereof, directly or indirectly, is to interfere with, restrain, or coerce employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing, or is to obtain information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

   **(4)** any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertakes activities where an object thereof, directly or indirectly, is to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing, or undertakes to supply such employer with information concerning the activities of employees or a labor organization in connection with a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding; or

**(5)** any payment (including reimbursed expenses) pursuant to an agreement or arrangement described in subdivision (4);

shall file with the Secretary a report, in a form prescribed by him, signed by its president and treasurer or corresponding principal officers showing in detail the date and amount of each such payment, loan, promise, agreement, or arrangement and the name, address, and position, if any, in any firm or labor organization of the person to whom it was made and a full explanation of the circumstances of all such payments, including the terms of any agreement or understanding pursuant to which they were made.

(b) Persuasive activities relating to the right to organize and bargain collectively; supplying information of activities in connection with labor disputes; filing and contents of report of agreement or arrangement

Every person who pursuant to any agreement or arrangement with an employer undertakes activities where an object thereof is, directly or indirectly--

**(1)** to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or

**(2)** to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

shall file within thirty days after entering into such agreement or arrangement a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the name under which such person is engaged in doing business and the address of its principal office, and a detailed statement of the terms and conditions of such agreement or arrangement. Every such person shall file annually, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing a statement (A) of its receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of its disbursements of any kind, in connection with such services and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.

(c) Advisory or representative services exempt from filing requirements

Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

(d) Exemption from filing requirements generally

Nothing contained in this section shall be construed to require an employer to file a report under subsection (a) of this section unless he has made an expenditure, payment, loan, agreement, or arrangement of the kind described therein. Nothing contained in this section shall be construed to require any other person to file a report under subsection (b) of this section unless he was a party to an agreement or arrangement of the kind described therein.

(e) Services by and payments to regular officers, supervisors, and employees of employer

Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as a regular officer, supervisor, or employee of such employer.

(f) Rights protected by section 158(c) of this title

Nothing contained in this section shall be construed as an amendment to, or modification of the rights protected by, section 158(c) of this title.

(g) "Interfere with, restrain, or coerce" defined

The term "interfere with, restrain, or coerce" as used in this section means interference, restraint, and coercion which, if done with respect to the exercise of rights guaranteed in section 157 of this title, would, under section 158(a) of this title, constitute an unfair labor practice.

CREDIT(S)

(Pub.L. 86-257, Title II, § 203, Sept. 14, 1959, 73 Stat. 526.)

Current through P.L. 113-36 approved 9-18-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

**Westlaw.**

c

United States Code Annotated Currentness
  Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
    IV. Arraignment and Preparation for Trial
    ➡➡ **Rule 16. Discovery and Inspection**

<[Text of subsection (a) effective until December 1, 2013,
absent contrary Congressional action.]>

**(a) Government's Disclosure.**

  **(1) Information Subject to Disclosure.**

    **(A) Defendant's Oral Statement.** Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

    **(B) Defendant's Written or Recorded Statement.** Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

      **(i)** any relevant written or recorded statement by the defendant if:

        • the statement is within the government's possession, custody, or control; and

        • the attorney for the government knows--or through due diligence could know--that the statement exists;

      **(ii)** the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

      **(iii)** the defendant's recorded testimony before a grand jury relating to the charged offense.

    **(C) Organizational Defendant.** Upon a defendant's request, if the defendant is an organization, the government must disclose to the defendant any statement described in Rule 16(a)(1)(A) and (B) if the government contends that the person making the statement:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(i) was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent; or

(ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct because of that person's position as the defendant's director, officer, employee, or agent.

**(D) Defendant's Prior Record.** Upon a defendant's request, the government must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government knows--or through due diligence could know--that the record exists.

**(E) Documents and Objects.** Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

**(F) Reports of Examinations and Tests.** Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:

(i) the item is within the government's possession, custody, or control;

(ii) the attorney for the government knows--or through due diligence could know--that the item exists; and

(iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

**(G) Expert witnesses.**--At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw.**

Federal Rules of Criminal Procedure, Rule 16                                                    Page 3

qualifications.

**(2) Information Not Subject to Disclosure.**Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

**(3) Grand Jury Transcripts.**This rule does not apply to the discovery or inspection of a grand jury's recorded proceedings, except as provided in Rules 6, 12(h), 16(a)(1), and 26.2.

<[Text of subsection (a) effective December 1, 2013,
absent contrary Congressional action.]>

**(a) Government's Disclosure.**

**(1) Information Subject to Disclosure.**

**(A) Defendant's Oral Statement.**Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

**(B) Defendant's Written or Recorded Statement.**Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

**(i)** any relevant written or recorded statement by the defendant if:

• the statement is within the government's possession, custody, or control; and

• the attorney for the government knows--or through due diligence could know--that the statement exists;

**(ii)** the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

**(iii)** the defendant's recorded testimony before a grand jury relating to the charged offense.

**(C) Organizational Defendant.**Upon a defendant's request, if the defendant is an organization, the government must disclose to the defendant any statement described in Rule 16(a)(1)(A) and (B) if the government contends that the person making the statement:

(i) was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent; or

(ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct because of that person's position as the defendant's director, officer, employee, or agent.

**(D) Defendant's Prior Record.**Upon a defendant's request, the government must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government knows--or through due diligence could know--that the record exists.

**(E) Documents and Objects.**Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

**(F) Reports of Examinations and Tests.**Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:

(i) the item is within the government's possession, custody, or control;

(ii) the attorney for the government knows--or through due diligence could know--that the item exists; and

(iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

**(G) Expert witnesses.**--At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

USCA Case #13-3066      Document #1464600          Filed: 11/04/2013      Page 94 of 102

qualifications.

**(2) Information Not Subject to Disclosure.**Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

**(3) Grand Jury Transcripts.**This rule does not apply to the discovery or inspection of a grand jury's recorded proceedings, except as provided in Rules 6, 12(h), 16(a)(1), and 26.2.

**(b) Defendant's Disclosure.**

**(1) Information Subject to Disclosure.**

**(A) Documents and Objects.**If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:

   **(i)** the item is within the defendant's possession, custody, or control; and

   **(ii)** the defendant intends to use the item in the defendant's case-in-chief at trial.

**(B) Reports of Examinations and Tests.**If a defendant requests disclosure under Rule 16(a)(1)(F) and the government complies, the defendant must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:

   **(i)** the item is within the defendant's possession, custody, or control; and

   **(ii)** the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony.

**(C) Expert witnesses.**--The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if--

   **(i)** the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or

   **(ii)** the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Federal Rules of Criminal Procedure, Rule 16                                          Page 6

defendant's mental condition.

This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

**(2) Information Not Subject to Disclosure.** Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of:

**(A)** reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or

**(B)** a statement made to the defendant, or the defendant's attorney or agent, by:

**(i)** the defendant;

**(ii)** a government or defense witness; or

**(iii)** a prospective government or defense witness.

**(c) Continuing Duty to Disclose.** A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:

**(1)** the evidence or material is subject to discovery or inspection under this rule; and

**(2)** the other party previously requested, or the court ordered, its production.

**(d) Regulating Discovery.**

**(1) Protective and Modifying Orders.** At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

**(2) Failure to Comply.** If a party fails to comply with this rule, the court may:

**(A)** order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

**(B)** grant a continuance;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(C)** prohibit that party from introducing the undisclosed evidence; or

**(D)** enter any other order that is just under the circumstances.

CREDIT(S)

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 22, 1974, eff. Dec. 1, 1975; July 31, 1975, Pub.L. 94-64, § 3(20)-(28), 89 Stat. 374, 375; Dec. 12, 1975, Pub.L. 94-149, § 5, 89 Stat. 806; Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 1994, eff. Dec. 1, 1994; Apr. 29, 2002, eff. Dec. 1, 2002; Nov. 2, 2002, eff. Dec. 1, 2002; Pub.L. 107-273, Div. C, Title I, § 11019(b), Nov. 2, 2002, 116 Stat. 1825; Apr. 16, 2013, eff. Dec. 1, 2013, absent contrary Congressional action.)

Amendments received to 6-15-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Federal Rules of Evidence Rule 401, 28 U.S.C.A.                                                    Page 1

**c**

United States Code Annotated Currentness
  Federal Rules of Evidence (Refs & Annos)
    Article IV. Relevance and Its Limits
      ➡➡ **Rule 401. Test for Relevant Evidence**

Evidence is relevant if:

**(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and

**(b)** the fact is of consequence in determining the action.

CREDIT(S)

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat.1931; Apr. 26, 2011, eff. Dec. 1, 2011.)

Amendments received to 7-15-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Federal Rules of Evidence Rule 403, 28 U.S.C.A.                                   Page 1

C

United States Code Annotated Currentness
    Federal Rules of Evidence (Refs & Annos)
        Article IV. Relevance and Its Limits
        ➔➔ **Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

CREDIT(S)

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1932; Apr. 26, 2011, eff. Dec. 1, 2011.)

Amendments received to 7-15-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

C

United States Code Annotated Currentness
  Federal Rules of Evidence (Refs & Annos)
    Article IV. Relevance and Its Limits
      ➡➡ **Rule 404. Character Evidence; Crimes or Other Acts**

**(a) Character Evidence.**

  **(1) Prohibited Uses.** Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

  **(2) Exceptions for a Defendant or Victim in a Criminal Case.** The following exceptions apply in a criminal case:

    **(A)** a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

    **(B)** subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may:

      **(i)** offer evidence to rebut it; and

      **(ii)** offer evidence of the defendant's same trait; and

    **(C)** in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

  **(3) Exceptions for a Witness.** Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

**(b) Crimes, Wrongs, or Other Acts.**

  **(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

  **(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Federal Rules of Evidence Rule 404, 28 U.S.C.A.                                      Page 2

accident. On request by a defendant in a criminal case, the prosecutor must:

   **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

   **(B)** do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

CREDIT(S)

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat.1932; Mar. 2, 1987, eff. Oct. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 26, 2011, eff. Dec. 1, 2011.)

Amendments received to 7-15-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

**Westlaw.**

C

United States Code Annotated Currentness
   Federal Rules of Evidence (Refs & Annos)
      Article VII. Opinions and Expert Testimony
        ➡➡ **Rule 703. Bases of an Expert's Opinion Testimony**

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

CREDIT(S)

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat.1937; Mar. 2, 1987, eff. Oct. 1, 1987; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 26, 2011, eff. Dec. 1, 2011.)

Amendments received to 7-15-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

Westlaw.

Rule 704. Opinion on an Ultimate Issue, FRE Rule 704

_____

United States Code Annotated
   Federal Rules of Evidence (Refs & Annos)
    Article VII. Opinions and Expert Testimony

Federal Rules of Evidence Rule 704, 28 U.S.C.A.

Rule 704. Opinion on an Ultimate Issue

Currentness

**(a) In General--Not Automatically Objectionable.** An opinion is not objectionable just because it embraces an ultimate issue.

**(b) Exception.** In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1937; Pub.L. 98-473, Title IV, § 406, Oct. 12, 1984, 98 Stat. 2067; Apr. 26, 2011, eff. Dec. 1, 2011.)

Amendments received to 7-15-13

_____

**End of Document** © 2013 Thomson Reuters. No claim to original U.S. Government Works.